CONTINENTAL OIL COMPANY, a Delaware Corporation, Plaintiff,

v.

BOARD OF REVIEW OF the INDUS-TRIAL COMMISSION of Utah and Fred L. Forsyth, Defendants.

No. 14699.

Supreme Court of Utah.

Aug. 5, 1977.

John W. Lowe of Brayton, Lowe & Hurley, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Floyd G. Astin, Asst. Atty. Gen., Salt Lake City, for defendants.

MAUGHAN, Justice.

Plaintiff, Continental Oil Company, petitioned this court for review of an order of the Board of Review determining that Fred L. Forsyth was not ineligible for unemployment compensation. We affirm the decision of the Board of Review. All statutory references are to U.C.A.1953.

Forsyth was employed by plaintiff as a district sales representative from June 1968 until February 11, 1976, when he was terminated solely for his driving record. Forsyth travelled approximately 25,000 miles per year in the conduct of his employer's business. He was furnished a company automobile for this purpose.

After his discharge, he applied for unemployment benefits. He was declared ineligible for a period of six weeks, on the ground he was discharged for misconduct connected with his work, Section 35-4-5(b)(1). He appealed from this determination, and a hearing was held before an appeals referee. The referee also found Forsyth ineligible for benefits for a period of six weeks. In an appeal to the Board of Review, the decision of the appeals referee was reversed, on the ground the evidence failed to support the finding Forsyth's discharge was for misconduct. Continental appeals, urging the decision of the appeals referee should be reinstated.

On February 4, 1976, Forsyth went to a private club for entertainment purposes with some of the personnel of Continental. Included in the group were some of his supervisors, who were visiting from out of town. Continental paid his membership fees for this club and accepted his charges as items on his expense account. The personnel in the group also drove company vehicles. Alcoholic beverages were drunk at this gathering. Forsyth remained at the club from approximately 4:30 p. m. until 7:00 p. m. He left to get his wife; for they were to attend a company banquet that evening.

While driving to his residence Forsyth was involved in an accident. He testified it was snowing, and the roads were slippery. The driver in front of him attempted to make a right turn into her driveway; she slipped past the driveway, Forsyth was unable to stop, and collided with her. The investigating officer arrested Forsyth for "driving under the influence." His trial on this charge was held subsequent to the hearing before the referee, and he was acquitted.

A copy of the investigating officer's report was directed to plaintiff's regional manager. The report revealed Forsyth was driving on a restricted license. He had been involved in a single vehicle collision on February 3, 1975, at which time he was charged and subsequently convicted for "driving under the influence." Forsyth's license had been revoked, but he had been issued a restricted license permitting him to drive in connection with his work and for emergencies.

Forsyth had not reported this accident to his employer, but the referee found Conti-

nental did not promulgate a definite written policy requiring such reports; until February 27, 1975. Forsyth testified he did not report the accident, because he had just previously been awarded the company's five-year safety award for driving. This first accident had also occurred after Forsyth had attended a company party, including supervisory personnel. After the company received knowledge of these two accidents, it checked its records and discovered Forsyth had been involved in a minor accident in August 1975; which was found not to be his fault. On February 11, 1976, he was terminated solely on the basis of his driving record.

■ At the hearing before the referee, plaintiff presented evidence indicating Forsyth had been issued two moving traffic violations, one in 1973, and one in 1974. However, these citations were not discovered until March 25, 1976, approximately one and one-half months after Forsyth had been discharged; therefore, they cannot be considered as evidence to support the reason for his termination.

The appeals referee found the cause of Forsyth's dismissal was his driving record; specifically, the two accidents in which he received a citation by the investigating officer for driving under the influence of an intoxicant. The finding was:

. . . Conduct contrary to the best interests of the employer in the operation of this vehicle demonstrates an indifference or disregard of the employee's duty to his employer which constitutes a breach of his duties and obligations arising out of the contract of employment, and comprises misconduct in connection with his work.

Thereafter, the Board of Review considered the record and testimony before the referee. In the interim Forsyth was acquitted of the driving under the influence charge. In reversing the referee, the Board stated they considered the length of claimant's employment, the fact he drove 25,000 miles per year, his prior driving citations, and his acquittal. The Board found claimant may have used poor judgment in not

reporting his accident in February 1975. However the company had no well defined procedure requiring such report until a time subsequent to that accident. The Board of Review ruled:

. . . The company could very well have had good cause in terminating the claimant; however, the evidence fails to support a finding that his discharge was for misconduct.

■ Plaintiff contends the Board of Review should be required to affirm the determination of the appeals referee, if there be any competent evidence to sustain his findings. Plaintiff cites Section 35–4–10(i), and claims the Board of Review acts in an appellate capacity and should therefore adhere to the standard in the statute that the findings of fact are conclusive if supported by the evidence.

The specific provisions of Chapter 4, Title 35, do not sustain plaintiff's argument.

The significant provisions of Section 35–4–10(i) provide:

. . . In any *judicial proceeding* under this section the findings of the commission and the board of review as to the facts if supported by evidence shall be conclusive and the jurisdiction *of said court* shall be confined to questions of law. . . . [Emphasis added.]

In contrast, the power of the Board of Review is set forth in Section 35–4–10(d)(2):

. . . Upon appeal the board of review may on the basis of the evidence previously submitted in such case, or upon the basis of such additional evidence as it may direct be taken, affirm, modify or reverse the findings, conclusions and decision of the appeal referee. . . .

■ Under Section 35–4–10(i), the role of this court is to sustain the determination of the Board of Review, unless the record clearly and persuasively proves the action of the Board was arbitrary, capricious and unreasonable. Specifically, as a matter of law, the determination was wrong; because

only the opposite conclusion could be drawn from the facts.[1]

Plaintiff contends Forsyth was discharged for misconduct connected with his work. Chapter 4, Title 35, does not define the term "misconduct," nor do we have decisional law which does so however, we are not without aid in reaching our decision.

■ In *Boynton Cab Co. v. Neubeck*,[2] the court was confronted with the meaning of "misconduct" in an unemployment compensation statute. The court observed that under common usage the term "misconduct" has several meanings which equally could be within the scope of the statute. When such an ambiguity exists, the general purpose and object of the legislature in enacting the statute should be ascertained and the term should be construed in accordance with it.

■ The purpose of the statute was to cushion the effect of unemployment by the payment of benefits to a worker in the event of his unemployment. These payments were to accrue to all covered workers, who were "eligible," under the statute. However, an employee was not eligible if he had been discharged for misconduct connected with his work. Thus the benefits acquired by an employee could be lost in case of his discharge for misconduct. The provision, when it is operative, has the effect of a penalty or forfeiture on the employee. In *Boynton* the court stated:

> . . . If mere mistakes, errors in judgment or in the exercise of discretion, minor and but casual or unintentional carelessness or negligence, and similar minor peccadilloes must be considered to be within the term 'misconduct', and no such element as wantonness, culpability or wilfulness with wrongful intent or evil design is to be included as an essential element in order to constitute misconduct within the intended meaning of the term as used in the statute, then there will be defeated, as to many of the great mass of less capable industrial workers, who are in the lower income brackets and for whose benefit the act was largely designed, the principal purpose and object under the act of alleviating the evils of unemployment by cushioning the shock of a lay-off, which is apt to be most serious to such workers.

The court further said a statute for a forfeiture should be strictly construed, and an ambiguous or doubtful term should be given a construction which is least likely to work a forfeiture. The penal character of the provision should be minimized by excluding, rather than including, conduct not clearly intended to be within the provision.

Based on the foregoing principles, it was the opinion of the court:

> . . . the intended meaning of the term 'misconduct' . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute.[3]

---

1. *Denby v. Board of Review of the Industrial Commission of Utah*, Utah, 567 P.2d 626 (1977).

2. 237 Wis. 249, 296 N.W. 636, 640 (1941).

3. This definition has been widely adopted or applied in many jurisdictions. See *Maywood Glass Co. v. Stewart*, 170 Cal.App.2d 719, 339 P.2d 947 (1959); *Gaunce v. Board of Labor Appeals*, Emp. Sec. Div., 164 Mont. 445, 524 P.2d 1108; *In re Employees of Edgewater Inn*, 10 Wash.App. 437, 517 P.2d 973 (1974); *Mitchell v. Lovington Good Samaritan Center*, 89 N.M. 575, 555 P.2d 696 (1976); *Employment Security Commission v. Myers*, 17 Ariz.App.

Also in accord is *Jacobs v. California Unemployment Insurance Appeals Board*,[4] the court stated that the test of misconduct is essentially volitional.

> . . . The conduct may be harmful to the employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment benefits only if it is wilful, wanton or equally culpable.[5]

 In the matter before us, the appeals referee did not find Forsyth's conduct evinced a deliberate, wilful, or wanton disregard of his employer's interest. He found conduct contrary to the best interests of the employer demonstrating indifference or disregard of the employees duty, thus constituting a breach of that duty and comprising misconduct. The intent of Forsyth was not specifically considered by the referee; without a finding of culpability, the determination of misconduct was wrong as a matter of law. The Board of Review characterized Forsyth's conduct as indicating poor judgment, but it construed the evidence as insufficient to support a finding of misconduct. The element of wilfulness, or wantonness, or equal culpability was not apparent.

A review of the record reveals the credible evidence and reasonable inferences to be drawn from it will support opposing findings as to Forsyth's intent. In such a case, the finding of the Board of Review is conclusive, and its determination is sustained.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

87, 495 P.2d 857 (1972); *Barnum v. Williams*, 84 Nev. 37, 436 P.2d 219 (1968); *Jacobs v. California Unemployment Insurance Appeals Board*, 25 Cal.App. 1035, 102 Cal.Rptr. 364; 26 A.L.R.3d 1356, Sec. 3, p. 1359.

4. Note 3, supra.

5. At p. 366 of 102 Cal.Rptr.