**CLEARFIELD CITY, a Municipal Corporation of the State of Utah, Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, Industrial Commission of Utah, and Benjamin R. Rendon, Defendants.**

**No. 18388.**

Supreme Court of Utah.

March 30, 1983.

Alfred C. Van Wagenen, Clearfield, for plaintiff.

David L. Wilkinson, Atty. Gen., Floyd G. Astin, K. Allan Zabel, Salt Lake City, for defendants.

OAKS, Justice:

This action to review a decision of the Board of Review of the Department of Employment Security turns on the meaning of a 1979 amendment to U.C.A., 1953, § 35–4–5(b)(1), relating to eligibility after a discharge for misconduct.

Since the original enactment of the Employment Security Act in 1941, an employee has been ineligible for unemployment compensation benefits when "discharged for misconduct connected with his work . . . ." 1941 Utah Laws, ch. 40, § 5. Such provisions are common. *See generally* 76 Am. Jur.2d *Unemployment Compensation* §§ 52–58 (1975); *Annot.* 89 A.L.R.2d 1089

(1963). In *Continental Oil Co. v. Board of Review,* Utah, 568 P.2d 727 (1977), we construed this provision for the first time and held that it did not make ineligible a salesman who was discharged for driving under the influence of alcohol because that conduct, while it amounted to indifference or disregard of duty, lacked the "element of wilfulness, or wantonness, or equal culpability" necessary to a finding of "misconduct." *Id.* at 731.

In 1979, our Legislature expanded the provision on ineligibility for misconduct, in effect providing a statutory definition of that term. Under the heading of "discharge for misconduct," the amended statute makes an employee ineligible for unemployment compensation benefits for a specified period of time when

> the claimant was discharged for an act or omission in connection with employment, not constituting a crime, which is deliberate, willful, or wanton and adverse to the employer's rightful interest . . . .

U.C.A., 1953, § 35–4–5(b)(1).

This appeal provides our first opportunity to construe this new amendment. The facts are undisputed. The only issue is the meaning and application of the statute as it relates to eligibility for unemployment compensation. The claimant does not deny that his employer had cause to discharge him. But it is clear that not every cause for discharge provides a basis to deny eligibility for unemployment compensation.

### 1. *The Facts.*

The plaintiff city employed the individual respondent as a police sergeant. He also worked as a part-time counselor at the Clearfield Job Corps Center, which is located in the city. On the evening of September 25, 1981, in an office at the Job Corps Center, the officer engaged in an act of sodomy with a 22-year-old female student at the Center. Several other Job Corps students observed the act. Three days later, he was discharged from his part-time employment at the Center. The incident was widely publicized in the community. When his police and city supervisors ques-

tioned him about the incident, the officer denied that it had occurred and claimed that he was being "set up." Later, following a polygraph examination on October 20, he admitted that the act had occurred.

The officer was charged with the crime of sodomy. U.C.A., 1953, § 76–5–403. On November 13, the chief of police made a written request for his resignation, stating that his conduct with the woman had brought embarrassment to the police department and to law enforcement in general and had greatly jeopardized his effectiveness as a police officer. The officer resigned, effective November 23. About a month later, a circuit court jury acquitted him of the crime of sodomy.

On November 25, 1981, the officer filed a claim for unemployment compensation benefits. The Department representative allowed the claim, and he received $166 weekly benefits totalling $1,162. The appeal referee reversed, disallowing the benefits upon his conclusion that the admitted circumstances of discharge were such that § 35–4–5(b)(1) disqualified the officer from benefits.[1] On appeal, the Board of Review, splitting 2–1, reversed the referee and held the officer entitled to the benefits. The majority reasoned as follows:

> [T]he act for which the claimant was fired took place while the claimant was off duty as a police officer. There is evidence that the claimant was fired more because of his initial denial that the act had occurred rather than because of the act itself. *The evidence is insufficient to establish that the claimant intended to cause harm to his employer or that his act was an intentional disregard of the employer's rightful interests.* Of lesser importance is the fact that the claimant was not found guilty by the jury in his trial under the criminal charges resulting from this act. Not only were the parties consenting adults but the record indicates that the claimant may have been "set up." Although the claimant's

actions were unlawful, there is a distinction between momentarily succumbing to physical emotion as compared to premeditated criminal activity. Under these circumstances the Board of Review holds that the claimant's actions *did not meet that degree of culpability required for disqualification* under the Utah Employment Security Act. [Emphasis added.]

Member Darcie H. White dissented in an opinion which noted that the act the officer admitted was not only unlawful but was further reprehensible because it was committed while he was on duty as a counselor at the Job Corps Center, where he had counseled the male students to leave the girls alone. The dissent continues:

> The claimant then further compounded his error and destroyed his credibility as a police officer by denying to his superior officer, the Police Chief, that the activity had actually taken place. In the sensitive area of law enforcement a police officer's reputation of high moral character and his credibility as a witness in his frequent appearances in the courts of law are essential to his effective performance of his duty. . . . Under these circumstances I find that the claimant's actions were *sufficiently culpable and adverse to the employer's rightful interests to invoke a disqualification* under Section 35–4–5(b)(1) of the Utah Employment Security Act. [Emphasis added.]

For the reasons explained below, we agree with the position of the dissent, and reverse the Board of Review.

Section 35–4–5(b)(1), quoted above, provides that a claimant "discharged for misconduct" will be ineligible for unemployment compensation when three requirements are fulfilled: the claimant was (1) "discharged for an act or omission in connection with employment," which was (2) "deliberate, willful, or wanton," and (3) "adverse to the employer's rightful interest." The majority of the Board of Review

---

1. Since the claimant did not withhold material information in his application, he was held to be without fault in the overpayment. Consequently, the appeal referee did not require repayment in cash, but applied the statute that makes the claimant liable to have the $1,162 deducted from future benefits. § 35–4–6(e).

apparently rested its decision upon the absence of the second requirement, which it called the "degree of culpability." The Board of Review apparently did not deny that the other two requirements were fulfilled, but we will still discuss them as background for our review of the contested one.[2]

## 2. Connection with Employment.

States with similar statutes have held that "connection with employment" is not limited to misconduct "which occurred during the hours of employment and on the employer's premises." *Employment Security Board v. LeCates,* 218 Md. 202, 210, 145 A.2d 840, 845 (1958). *Accord: O'Neal v. Employment Security Agency,* 89 Idaho 313, 319, 404 P.2d 600, 603 (1965); *Nevel v. Commonwealth, Unemployment Compensation Board of Review,* 32 Pa.Commw. 6, 377 A.2d 1045, 1047 (1977); *Gregory v. Anderson,* 14 Wis.2d 130, 136–37, 109 N.W.2d 675, 679 (1961), noted in 1962 *Wis.L.Rev.* 392. It is only necessary that the misconduct have such "connection" to the employee's duties and to the employer's business that it is a subject of legitimate and significant concern to the employer.

The foregoing principle has been applied to deny unemployment benefits to employees discharged for off-duty behavior analogous to the acts involved in this case. In *O'Neal,* a postal worker was charged with an act of lewdness with a minor child. There the court cited a postal regulation forbidding immoral or notoriously disgraceful conduct, observed that the employee's conduct was "closely connected with the business interests of the employer," and concluded that a public or private employer "has the right to expect his employees to refrain from acts which would bring dishonor on the business name or the institution." 89 Idaho at 319, 404 P.2d at 603–04. In *Nevel,* which involved liquor law violations by a state liquor agency employee, the court relied on the fact that the claimant had "deliberately disregarded a statute which his employer had the affirmative duty to

administer and enforce." 377 A.2d at 1047. In *Gregory,* a truck driver who violated an employer's rule against drinking while off duty was held ineligible for benefits. In addition to the foregoing precedents, which are relevant to the "connection" between the officer's employment and his off-duty act of sodomy, the false denial he gave his supervisors was of course given in the direct course of his employment.

## 3. Adverse to Employer's Interest.

The act of sodomy violated the laws the officer and his employer had a sworn duty to uphold and enforce. It occurred within the limits of the city where he was on call 24 hours a day as a police officer. It was also a violation of the terms of his part-time employment, which resulted in his discharge by an institution with which he would be obliged to work in his capacity as an officer. He first denied the act and then admitted it. This entire course of events was a matter of public notoriety in the city, and, as the dissenting opinion of member White observed, would surely have a significant adverse effect upon the officer's credibility as a police officer and as a witness in the courts of law. The whole sequence of events was undeniably adverse to the rightful interests of his employer.

## 4. Degree of Culpability.

In determining whether the officer's misconduct was "deliberate, willful, or wanton," we do not review the Department's findings of fact, as was done in *Taylor v. Department of Employment Security,* Utah, 647 P.2d 1 (1982). The facts are undisputed in this case. Instead, we review the Department's interpretation of operative provisions of its governing legislation and its application of those legal rules to the facts in this case. As to either of those functions, we review the agency's decision to see whether it falls "within the limits of reasonableness or rationality." *Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601, 609–12 (1983).

**2.** We do not discuss the statutory requirement of "discharge for misconduct" since the parties apparently concede that despite his resignation the officer was, in effect, discharged.

The emphasized language in the quotation from the Board of Review's majority opinion makes it apparent that they interpreted § 35–4–5(b)(1) as requiring *intentional* infliction of harm or *intentional* disregard of employer interest. The majority opinion explains that this claimant is eligible for benefits because they found no evidence that he "intended to cause harm to his employer or that his act was an intentional disregard of his employer's rightful interests." The question on our review is whether that interpretation falls within the standard of reasonableness as measured against the language and purpose of the governing legislation.

Intentional infliction of harm or willful or wanton disregard of the employer's interests are standards often stated in court decisions interpreting the meaning of statutes which use the words "willful misconduct" without further definition. *E.g., Continental Oil Co. v. Board of Review, supra,* 568 P.2d at 730, quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941); *O'Neal v. Employment Security Agency,* 89 Idaho at 317, 404 P.2d at 602; 76 Am.Jur.2d *Unemployment Compensation* § 52 (1975). But where the statute specifically defines the type of misconduct that disqualifies, it displaces common law standards to the contrary, especially when the statute was amended immediately after interpretive litigation.

Here, the 1979 amendment to § 35–4–5(b)(1) makes no reference to an "intent to cause harm" or to an "intentional disregard of the employer's interests." All the statute requires is that the employee was discharged for misconduct that was "deliberate, willful, or wanton." In this case, the two acts of misconduct (sodomy and deceiving the employer) were both "deliberate" and "willful" in the sense that they were volitional acts by an employee who could

not have been heedless of their consequences.[3] It only remains to determine whether those acts were sufficiently serious to involve the "degree of culpability" that the Department concluded (reasonably, in our view) was impliedly required by this statute.

Maryland's statute, which disqualifies for "deliberate and willful misconduct connected with his work," is similar to § 35–4–5(b)(1). In construing that language in *Employment Security Board v. LeCates,* 218 Md. at 208, 145 A.2d at 844, the Maryland Court of Appeals quoted approvingly from a commentator who stated that "what is 'deliberate and wilful misconduct' will vary with each particular case," so "the 'wrongness' of the conduct must be judged in the particular employment context." The court then framed this rule:

> The important element to be considered is the nature of the misconduct and how seriously it affects the claimant's employment or the [employer's][4] rights.

218 Md. at 209, 145 A.2d at 844.

In applying that rule to disqualify a supervisory employee from unemployment compensation benefits for an unauthorized off-duty use of a company truck and for not reporting an accident, the court held:

> We have no difficulty in concluding that the claimant's acts in this instance constituted "deliberate and wilfull" misconduct within the meaning of the statute. Such conduct evinced an utter disregard of the employee's duties and obligations to his employer and was calculated to disrupt the discipline and order requisite to the proper management and control of a large food processing company [where he was a supervisor] .... And, of more concern to the employer, the misconduct was such as to adversely affect the em-

---

**3.** In *Continental Oil Co. v. Board of Review, supra,* we held that mere inefficiency or failures of performance as a result of inability, inadvertence, ordinary negligence, or good faith error did not constitute "misconduct." 568 P.2d at 730. Nothing in this case is intended to cast doubt on that holding.

**4.** The official reporter reads "employee's," but in the context of the opinion this is obviously meant to be "employer's."

ployee's suitability to continue as a supervisor in the plant of his employer.

218 Md. at 209–10, 211, 145 A.2d at 844–45.

We think the *LeCates* interpretation fully applies to the similar language of our statute and to the circumstances of this case. The nature of the acts of misconduct in this case was such as to have a serious effect on the claimant's employment and the employer's interests. They not only disabled the employee from continued effectiveness as a police officer, but they also discredited his employers, the police department, and the city, and seriously impaired the same interests the officer was employed to further. The Board of Review exceeded the limits of reasonableness in concluding that the statute requires those harms to be intended by the employee. It is sufficient that he intended the acts and that the foreseeable harms were sufficiently serious to meet the statutory degree of culpability.

The decision of the Board of Review is reversed and the cause is remanded for the Commission to enter an order in accordance with this opinion. § 35–4–10(i).

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.