**Randy M. LANE, Plaintiff,**

v.

**The BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, Defendant.**

No. 20888.

Supreme Court of Utah.

Oct. 16, 1986.

Curtis L. Child, Ogden, for plaintiff.

David L. Wilkinson, Atty. Gen., Lorin R. Blauer, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

This is an appeal from a decision of the Board of Review of the Industrial Commission reversing a decision of the administrative law judge. The Board found that Randy M. Lane was discharged from his employment for just cause, thus disqualifying him from receiving benefits under the Employment Security Act. We conclude as a matter of law that "just cause" to discharge Lane did not exist.

For five years, Lane and his wife were employed by Telum, Inc., as co-assistant managers of a diesel fuel truck stop in Parowan, Utah. On April 5, 1985, Lane was cited by the Parowan City Police for selling beer to a minor. As a result, Lane was fired from his employment with Telum on April 7.

Lane sought unemployment compensation. The administrative law judge scheduled a hearing to determine whether Lane was eligible to receive benefits.[1] At the hearing, Lane testified that he was aware that Telum prohibited the sale of beer to minors and that the person to whom he sold the beer was a minor. Lane claimed, however, that his error in not checking the customer's identification was merely an er-

---

1. Under section 35–4–5(b)(1) of the Code, a person is not entitled to unemployment benefits when *"discharged for just cause* or for an act or omission in connection with employment, not constituting a crime, which is deliberate, willful, or wanton and adverse to the employer's rightful interest." U.C.A., 1953, § 35–4–5(b)(1) (1974 ed., Supp.1985) (emphasis added).

ror in judgment that did not provide Telum with just cause to terminate his employment. Lane asserted that Telum's policy was to check the identification of any person who did not look old enough to purchase beer, and that the individual to whom he sold the beer was wearing old clothes and a slouched hat, had a beard, and appeared to be over twenty-one years of age. A representative of Telum testified that Telum's policy was that employees were not to sell beer to minors under any circumstances and that an employee who was cited for selling beer to a minor was subject to automatic dismissal. The administrative law judge found that Telum's policy was as Lane had described it, and that Lane's error was inadvertent rather than intentional. Lane was awarded benefits.

On appeal by the employer, the Board of Review reversed the administrative law judge. Relying upon the terms of Proposed Rule A71–07–1:5(II)–1(A)(3) of the Department of Employment Security Rules and Regulations,[2] the Board found that Lane's conduct provided Telum with just cause for discharging him and that he therefore was ineligible for benefits. Lane appeals.

■ Initially, Lane argues that the Board erred by applying the proposed rule in determining that he had been discharged for "just cause," because that rule has not been adopted in accordance with the provisions of the Utah Administrative Rule Making Act. U.C.A., 1953, § 63–46a–1 et seq. (1978 ed., Supp.1985). We agree. The proposed rule certainly is an administrative rule that must be promulgated in accordance with the requirements of the Rule Making Act. *See id.* at §§ 63–46a–2 and 3.

And as we recently have held, the rules of an administrative agency are not valid unless the agency complies with the rule-making procedures prescribed in the Rule Making Act. *Williams v. Public Service Commission,* 720 P.2d 773, 775–77 (Utah 1986). Therefore, the proposed rule cannot be applied in determining the existence of "just cause" under section 35–4–5(b)(1) of the Employment Security Act.

The Board notes that we previously have considered and have approved the proposed rule in *Kehl v. Board of Review,* 700 P.2d 1129 (Utah 1985). It is true that in *Kehl,* we stated that the proposed rule was within "the limits of reasonableness and rationality." *Id.* at 1134. However, in that case neither party raised the problem of the incomplete adoption of the rule. Therefore, while *Kehl*'s judgment on the reasonableness of the rule is sound, *Kehl* does not change the fact that a proposed administrative rule which was not yet in force when Lane's discharge occurred cannot now provide a lawful basis for the Board's decision.[3] If the Board's action is to be upheld in this case, Lane's conduct must be judged solely under the provisions of section 35–4–5(b)(1) of the Code.

In determining whether the Board was correct in finding that Lane was discharged for "just cause," we first must define that term. Some historical background is of assistance, since none of our cases have directly addressed the issue. Prior to 1979, an employee was ineligible for benefits if he was "discharged for misconduct connected with his work." 1941 Utah Laws, ch. 40, § 5. This provision was interpreted in *Continental Oil Co. v. Board of Re-*

---

**2.** The text of the proposed rule is reprinted in *Kehl v. Board of Review,* 700 P.2d 1129, 1133–34 (Utah 1985). It endeavors to interpret the standard of "just cause" in section 35–4–5(b)(1) and essentially requires (i) that the employee's conduct be "culpable" in the sense of seriously affecting the employment relationship or harming the employer's rightful interests; (ii) that the employee have knowledge of the conduct which was expected of him; and (iii) that the offending conduct be within the control of the employee.

**3.** As of January 15, 1986, the proposed rule with certain organizational, rather than substantive, changes was finally adopted in accordance with the Rule Making Act. Based upon our holding in *Kehl* that the proposed rule is a reasonable and rational articulation of the statutory standard of just cause, it appears that the adopted rule can properly serve as the basis of decision of any matter decided after January 15, 1986. Our ruling today only applies to matters decided by the agency before the effective date of the rule.

*view*, 568 P.2d 727 (Utah 1977), where we determined that an employee's "misconduct" must evidence an "element of willfulness or wantonness or equal culpability." *Id.* at 731. This construction of the term "misconduct" was based upon a recognition that the general purpose of the Employment Security Act is to "cushion the effect of unemployment" upon those out of work, and that this purpose would not be served if employment benefits were not available in the substantial number of cases where discharges occurred as a result of "mere mistakes, errors in judgment or in the exercise of discretion." *Id.* at 730 (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941)).

In 1979, the legislature amended the statute and incorporated language similar to that used by this Court in *Continental Oil.* Under the amended language, an employee was disqualified from receiving benefits when he or she was discharged "for an act or omission in connection with employment, not constituting a crime, which is deliberate, willful, or wanton and adverse to the employer's rightful interest." 1979 Utah Laws, ch. 137, § 3. This new version of the statute was considered in *Clearfield City v. Department of Employment Security*, 663 P.2d 440 (Utah 1983). There the Board of Review had found that the employee was eligible for benefits because he had not intentionally harmed his employer's interests. On appeal, we reversed, holding that the "deliberate, willful, or wanton and adverse to the employer's rightful interests" requirement could be satisfied when the conduct resulting in discharge consisted of "volitional acts by an employee who could not have been heedless of their consequences." *Id.* at 444 (footnote omitted). In *Clearfield City*, then, we made it clear that despite any implication to the contrary in the 1979 amendment, and in *Continental Oil* upon which that amendment was based, disqualification for benefits did not require a showing that the employee intended to inflict harm upon or

intended to ignore or disregard the employer's interests, but also could apply if the employee simply acted with careless inattention to the consequences. *Clearfield City v. Department of Employment Security*, 663 P.2d at 444.

■ After the Board of Review's decision which we reversed in *Clearfield City*, but before our formal opinion in that case was issued, the legislature amended section 35-4-5(b)(1) to add the words "just cause" as a basis for a discharge that would disqualify an employee from benefits. 1983 Utah Laws, ch. 20, § 3.[4] Neither the legislative history nor the notes of the Labor and Economic Development Committee of the Utah Senate provide any guidance as to why the "just cause" language was added to the statute in 1983. However, from all the circumstances, and especially considering the Industrial Commission's application of the statute which we criticized in the *Clearfield City* decision, it appears that it was an effort to accomplish by amendment that which we achieved by interpretation in *Clearfield City:* a discharged employee ought to be somewhat culpable before being denied employment benefits, but the employee's culpability does not have to rise to the level of an intentional harm to the employer's interest.

We first considered the statute's new "just cause" language in *Kehl v. Board of Review*, 700 P.2d 1129 (Utah 1985). There, we responded to the employee's attempt to enlist the *Continental Oil* interpretation of "misconduct" as support for the argument that evidence of willfulness and wantonness is required for a "just cause" termination which will disqualify an employee from receiving benefits. After noting that *Continental Oil* interpreted a provision that was later repealed, we explained that "[d]ischarge for just cause was added to [the statute] as a *further reason* for denying unemployment benefits and [it] constitutes a *separate standard* from the delib-

---

**4.** This is the current version of the statute which is applicable to the present case. U.C.A., 1953, § 35-4-5(b)(1) (1974 ed., Supp.1985).

erate, willful, or wanton standard [of *Continental Oil* ]." *Id.* at 1135 (emphasis added). This statement went further than necessary under the circumstances because it failed to acknowledge *Clearfield City* 's ameliorating interpretation of the statute's "deliberate, willful, or wanton" language. However, it certainly does not contradict our present conclusion that "just cause," which was added to the statute by the 1983 amendment, and the "deliberate, willful, or wanton" standard, which was articulated in *Clearfield City* in 1983, present essentially a unitary standard for discharges which would result in the employee's loss of benefits.

We note that this interpretation is supported by paragraph (A)(4) of the Department of Employment Security's proposed rule [5] which was approved in *Kehl:*

> The term "just cause" as used in section [35–4–] 5(b)(1) does not lessen the requirement that there be some fault on the part of the employee involved. Prior to the 1983 addition of the term "just cause" the Commission interpreted section [35–4–] 5(b)(1) to require an intentional infliction of harm or intentional disregard of the employer's interests. The intent of the Legislature in adding the words "just cause" to section [35–4–]

5(b)(1) was apparently to correct this restrictive interpretation. While some fault must be present, it is sufficient that the acts were intended, the consequences were reasonably forseeable, and that such acts have serious affect [sic] on the employee's job or the employer's interests.

While the proposed rule cannot be applied in deciding this case, it is written by the agency most familiar with the interwoven legislative, judicial, and administrative history of "just cause." In the absence of legislative history, paragraph (A)(4) of the proposed rule is helpful and confirms our interpretation of what the legislature intended by its amendment of the statute in 1983.[6] In addition, in its brief, the Board of Review affirms that the proposed rule, which is an administrative interpretation of "just cause," is merely a regulatory codification of this Court's decision in *Clearfield City.*

We now must determine whether Lane was discharged for "just cause" as that term is used in the statute. Under the standards articulated in *Clearfield City,* which we use to define the term in the statute, this requires the finding of some fault or culpability on the part of Lane.[7] With regard to the first prong of *Clear-*

---

**5.** Paragraph (A)(4) of the proposed rule is identical to paragraph (B)(3) of the rule as it has been adopted.

**6.** An examination of the proposed rule respecting "just cause," and our holding in *Clearfield City* interpreting "deliberate, willful, or wanton" confirms that they define the same standard. For instance, both the proposed rule and *Clearfield City* anticipate that the conduct will occur "in connection with the employment." The proposed rule looks to "actual or potential harm to the employer's interest"; *Clearfield City* discusses whether the employee's conduct was "adverse to the employer's interest." The proposed rule requires that the employee have knowledge of the expected standard of conduct and that compliance with that standard be within the employee's control; *Clearfield City* requires that the disqualifying conduct be "volitional acts by an employee who could not have been heedless of their consequences." *Clearfield City v. Department of Employment Security,* 663 P.2d at 444 (footnote omitted).

**7.** Because the test we deduce from *Clearfield City* is substantially the same as that contained in the proposed rule, *see* note 6, *supra,* the result in *Kehl* would be no different had we considered it under the statute alone, without regard to the proposed rule. For this reason, any case improperly considered by the agency under the proposed rule before its effective date would not be decided any differently under the standard we articulate today. It may be suggested that we are engaging in a rather formalistic exercise by not basing our decision on the proposed rule which we approved in *Kehl* before we were made aware of the rule's nonfinal status. Quite the contrary, our opinion here adds essential interpretative background to the meaning of "just cause" as that term is used in the Employment Security Act. As for the nonfinal status of the rule, we are only reaffirming what was said in *Williams v. Public Serv. Comm'n,* 720 P.2d 773 (Utah 1986): in their rulemaking activities, administrative agencies must comply with the appropriate statutory requirements if their rules are to have any force and effect.

*field City*'s three-part test, we have no question that Lane's conduct was "in connection with employment." The sale of beer occurred while Lane was on duty at his employer's store. The beer was sold out of store inventory and payment went into the employer's cash register.

Application of the second prong of the *Clearfield City* test—whether the conduct was "adverse to the employer's interest"— is more difficult. Telum contends that as a result of Lane's conduct, it was subject to the loss of its business license under the Utah Liquor Control Act. *See* U.C.A., 1953, § 32–8–53 (1974 ed.). However, the revocation of a license under that statute can occur only if an unauthorized sale by an employee occurs with the employer's "knowledge, consent, connivance or acquiescence." *Id.* There is nothing in the record that suggests Telum consented to the unauthorized sale of beer and there is no evidence that Telum was likely to be prosecuted for this incident. On the other hand, the sale of beer to minors is a serious matter and contravenes a strong public policy. Telum may have been concerned that if it had failed to discharge Lane, it would have appeared to have acquiesced in Lane's unauthorized sale of liquor. On the record before us, we cannot conclude that the Board of Review erred in finding this element satisfied.

■ The third prong of the *Clearfield City* test is most pertinent here—whether the conduct evidences a sufficient "degree of culpability" in the sense that it constitutes a "volitional [act] by an employee who could not have been heedless of [its] consequences." The discharge of an employee for the sale of beer to a minor is a severe, although certainly permissible, response of the employer in enforcing its rules of employee conduct. Because the purpose of the Employment Security Act is to ameliorate the harsh effects of unemployment, however, "not every cause for discharge provides a basis to deny eligibility for unemployment compensation." *Clearfield City v. Department of Employment Security*, 663 P.2d at 441. One is not disqualified from unemployment benefits when his or her discharge is due to inefficiency, unsatisfactory conduct, or failure of good performance as a result of inadvertence or isolated errors in judgment or discretion. *Continental Oil Co. v. Board of Review*, 568 P.2d at 730; *Kehl v. Board of Review*, 700 P.2d at 1134. Instead, the degree of culpability which will disqualify an employee from receiving benefits involves "volitional acts by an employee who could not have been heedless of their consequences." *Clearfield City v. Department of Employment Security*, 663 P.2d at 444; *accord Trotta v. Department of Employment Security*, 664 P.2d 1195, 1199 (Utah 1983).

■ The record shows that Lane's conduct falls into the category of an isolated error in judgment or discretion. He testified before the administrative law judge that it was his employer's policy to check the identification of all persons whose age was questionable. The administrative law judge plainly credited this testimony. The Board of Review found that Lane "was responsible to ask for ID as proof of age in all cases where the purchaser's age is questionable." The uncontradicted evidence is that Lane's failure to check the age of the person to whom he sold beer was a mistake in judgment and not an intentional or knowing disregard of his employer's policy. Telum's representative testified that Telum's policy prohibited the sale of beer to anyone under the age of twenty-one. This is hardly a self-executing policy; rather, it is better characterized as a goal to be achieved. Yet there is nothing in the record to indicate that Telum established any clear procedures for employees to follow to *assure* that beer would not be sold to minors, other than to instruct them to check identification when age was in doubt. For example, Telum could have required the checking of identification of all people who looked younger than forty. Such a procedure might have been certain to achieve the goal, and it is a standard against which an employee's conduct could be better measured. Then, if, as in *Kehl*,

Lane had violated Telum's specific procedures for on-the-job conduct with respect to which he had been trained, a finding of just cause might be sustainable even for a first violation. However, when the employer leaves certain matters to the employee's discretion with only vague guidelines, although it can discharge that employee when he or she exercises that discretion in good faith but with untoward results, it cannot expect the employee to be denied unemployment compensation.

For these reasons, we reverse the decision of the Board of Review and hold that Lane's discharge was not for "just cause."

HALL, C.J., and STEWART, J., concur.

HOWE, Justice (concurring in the result):

I concur on the ground that Lane was guilty only of an isolated error in judgment, made in good faith, as explained in the majority opinion. I believe that "just cause" requires a higher degree of culpability than present here. However, I do not agree that "just cause" requires culpability equal to conduct which is "deliberate, willful, or wanton." When the legislature in 1983 added "just cause" to the statute, it was not engaging in a useless act. It intended "just cause" to be a separate and additional standard to that already in the statute of "deliberate, willful, or wanton." We so held in *Kehl v. Board of Review*, 700 P.2d 1129 (Utah 1985). While both standards require culpability on the part of the discharged employee, "just cause" includes conduct which does not rise to the degree of being "deliberate, willful, and wanton." The latter words describe conduct which falls short of being intentional but which is more culpable than negligent. "Just cause" for termination, however, might arise from the commission of a negligent act. For example, a repeated negligent act by an employee which endangers the safety of others at the work place might well constitute "just cause" for discharge but would not rise to the level of being "deliberate, willful, or wanton."

I therefore do not believe that the statute now contains a unitary standard, although it would seldom seem necessary to resort to the higher standard since the lesser standard of "just cause" would be more easily met.

DURHAM, J., concurs in the concurring opinion of HOWE, J.