NORTHWEST FOODS
LIMITED, Plaintiff,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

No. 20860.

Supreme Court of Utah.

Dec. 5, 1986.

Neil R. Sabin, Douglas K. Pehrson, Salt Lake City, for plaintiff.

K. Allan Zabel, Salt Lake City, for defendant.

HALL, Chief Justice.

Plaintiff-employer appeals a decision of the Board of Review awarding unemployment benefits to Karen A. Bontems.

Plaintiff operates several Burger King restaurants in Utah and is owned by John Gullo. Bontems had worked for plaintiff for nearly four years when, in March 1985, Gullo discharged her as manager of the Logan Burger King. By letter to Bontems, Gullo specified several reasons for the discharge, most of which concerned Bontems' alleged temper tantrums and use of abusive language.

Bontems had risen to the level of manager in two different restaurants operated by plaintiff. During 1984, Bontems managed the Logan restaurant, which had one of the better sales records and the highest profits of the restaurants owned by plaintiff in northern Utah. Gullo considered Bontems to be a very good technical manager, although he was concerned throughout her employment with her temperament and attitude toward supervision. Because of these problems, he considered placing Bontems in an assistant manager position in the Ogden area for additional training.

A series of confrontations occurred between Bontems, area supervisors, and Gullo during February and March 1985, which resulted in Bontems being placed on paid vacation for one week so that Gullo could "review her situation" and so that she could reflect upon why sales were below expectations and why she wanted to keep her job. While on vacation, Bontems entered the Logan restaurant to pick up some personal property. Gullo considered this a

violation of his directive to be on vacation and issued the letter of termination.

A representative of the Department of Employment Security denied Bontems' application for unemployment benefits on the ground that she was discharged for just cause or for an act or omission in connection with employment which was deliberate, willful, or wanton and adverse to the employer's rightful interests. U.C.A., 1953, § 35–4–5(b)(1) (Repl.Vol. 4B, 1974 ed., Supp.1986). Bontems appealed, and a hearing was held before an administrative law judge. Based upon evidence adduced at the hearing, the administrative law judge reversed the decision of the Department representative and allowed benefits on the ground that the conduct for which Bontems was discharged was not disqualifying under the aforementioned statute. That decision was thereafter affirmed by the Board of Review.

 The Board made the factual determination that Bontems' misconduct was not within her power and capacity to control or prevent.[1] The Board's decision specifically states:

> The Board of Review finds that the claimant did not have the emotional and/or personality talents and ability to perform the duties of the job to which she was assigned. Upon consideration of all the evidence in the record, it is concluded that the claimant did not have the skills and capability of dealing with the employer's other personnel in the place of business and in handling the customer relations requirements called for in the

particular position to which the claimant was assigned.

Plaintiff contends that the conclusion reached by the Board of Review is unreasonable and irrational in view of the record and that Bontems' display of temper, physical and verbal abuse of employees, and failure to stay away from the restaurant during vacation constituted intolerable conduct justifying termination.

The standard of review in this unemployment insurance case is that set forth in U.C.A., 1953, § 35–4–10(i) (Repl.Vol. 4B, 1974 ed., Supp.1985) (amended 1986), which provides in pertinent part: "In any judicial proceeding under this section the findings of the Commission and the Board of Review as to the facts if supported by evidence, shall be conclusive and the jurisdiction of said Court shall be confined to questions of law."

This Court has consistently held that the Commission's findings of fact are conclusive and binding, and are to be sustained if supported by competent and substantial evidence in the record.[2]

In the case of *Salt Lake City Corp. v. Department of Employment Security*,[3] the Court observed: "In reviewing the Commission's findings of fact, this Court is limited to determining whether those findings are supported by substantial evidence.... For this Court to set aside findings of fact, they must be without substantial support in the record and hence clearly arbitrary and capricious."[4] The Court additionally noted that the evidence in support of the Commission's findings of fact need not be undis-

---

[1] An employee is not disqualified from receiving unemployment benefits when his or her discharge is due to inefficiency, unsatisfactory conduct, or failure of good performance as a result of inadvertence or isolated errors in judgment or discretion. *Lane v. Board of Review of Indus. Comm'n,* 727 P.2d 206 (Utah 1986) (citing *Continental Oil Co. v. Board of Review of Indus. Comm'n,* 568 P.2d 727, 730 (Utah 1977)); *see also Clearfield City v. Department of Employment Sec.,* 663 P.2d 440, 444 n. 2 (Utah 1983). Instead, the degree of culpability which will disqualify an employee from receiving benefits under section 35–4–5(b)(1) involves "volitional acts by an employee who could not have been

heedless of their consequences." *Clearfield City,* 663 P.2d at 444. Implicit in this standard is the necessity of control by the employee. *See Lane,* 727 P.2d 206.

[2] *E.g., Whitney v. Board of Review of Indus. Comm'n,* 585 P.2d 780, 782 (Utah 1978); *Martinez v. Board of Review,* 25 Utah 2d 131, 132–33, 477 P.2d 587, 588 (1970).

[3] 657 P.2d 1312 (Utah 1982).

[4] *Id.* at 1315 (citations omitted).

puted: "[S]ubstantial evidence need not be uncontradicted evidence. It is for the administrative agency, not this Court, to choose between conflicting facts. It is beyond our prerogative to determine that the Board of Review's reliance on [claimant's] testimony was inappropriate." [5]

In the instant case, the evidence of the circumstances leading up to Bontems' discharge is in substantial conflict. This is particularly true with respect to the magnitude of Bontems' alleged misconduct and whether Gullo in fact forbade her from going upon the premises under any circumstances during her vacation.

The Board of Review obviously found Bontems' testimony to be the most persuasive. However, it also appears that considerable reliance was placed upon Gullo's testimony.

At the hearing before the administrative law judge, Gullo testified: "At no time did I ever really think that [Bontems'] actions were malicious.... I just thought it was a case of hypertension or whatever it was, but she had occasions of flare-ups." Later, Gullo stated: "I really didn't think her actions were willful or intentful [sic]...."

Plaintiff urges that the Board took the foregoing statement of Gullo's out of context. However, a review of the record reveals that such was not the case. The record shows that during Bontems' term of employment Gullo considered her to be a good manager and believed that her temperament and other shortcomings could be overcome, the bottom line being that she was a valuable employee worth saving. It appears that Bontems' discharge was more directly triggered by Gullo's dissatisfaction with the failure of the Logan restaurant to achieve its profit potential. This is clearly evidenced by Gullo's testimony which follows:

Gullo: Uh, there was—there was continuing Karen, although was a very good technical manager, had certain personality problems and people problems. She had been counseled about

this continuously, really probably through her whole term of employment....

....

Gullo: Okay. Anyways, it did happen. I'm not really clear of the time. At the same token I'd like to submit this as evidence which is a document from 1983 talking about Karen's situation in regards to the complaint letter to her just to establish the fact that although she was a good technical manager and basically performed, we have always had problems with her that we felt we could work out relevant to her temperament and her attitudes towards customers and employees.

....

Gullo: ... And although we were doing a good job, it was very evident that, based on this market track, that we had a lot of potential that we weren't tapping.

I explained to Karen my feelings for her which were—were positive comments. On the other hand, I explained to her that based on the things that were happening, her general dictatorial attitude with her hourly employees, and other—her lack of supervision, etc., etc., I said I really needed some time to review her situation because I could no longer tolerate or bear with the potential negative impact of what was happening in the restaurant.

....

Gullo: ... Alicia Narby ... and I sat down with her and I explained the situation to her and I asked her if she would contemplate taking Karen on as an assistant manager to—and work with her until the next restaurant opens up because then I would do some jockeying, basically saying, "Hey, if we can salvage her because of the money we've got invested in her, we should try and salvage her."

At no time did I ever really think that Karen's actions were malicious at that time. I just thought it was a case of

**5.** *Id.* at 1318 (citation omitted).

hypertension or whatever it was, but she had occasions of flare-ups....

....

Gullo: ... Based on the fact that she was a decent mechanical manager, I really didn't think her actions were willful or intentful, I did this as a gesture of faith of her....

....

Gullo: ... I've told Karen, yes, she did a good job; but it's evident that she wasn't maximizing the restaurant. It could have been better....

....

Gullo: So, therefore, all these things that she talks about in regards to the profits, yes, it was there. I did state she was a good mechanical manager. What we are talking about here is a separate issue which is how she handled her employees and how she handled my customers.

■ The record is clear that Bontems managed the Logan restaurant very profitably in 1984. This is so, notwithstanding Gullo's testimony that Bontems' language and attitude had always been a problem throughout her employment experience. It was thus not unreasonable for the Board to reject Gullo's assertion that those very acts of misconduct that occurred in 1984 suddenly caused a failure to reach new projected sales levels in 1985.

There being substantial evidence in the record to support the factual determination of the Board, we affirm its decision.

STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice: (Concurring in the Result).

I join in affirming the decision below that claimant Bontems is entitled to unemployment compensation. However, I cannot agree with the majority's reliance on the Industrial Commission's finding that the claimant lacked the culpability necessary to deny her benefits because her actions were beyond her power to control. Instead, I would measure the claimant's culpability by the essentially objective criteria laid down in our prior cases.

Under section 35–4–5(b)(1) of the Code, an employee cannot be denied unemployment compensation unless discharged for conduct (i) that occurred in connection with the employment, (ii) that was adverse to the employer's interest, and (iii) that evidences the requisite degree of culpability. *Clearfield City v. Department of Employment Security*, 663 P.2d 440 (Utah 1983); *Lane v. Board of Review*, 727 P.2d 206, (Utah 1986).

In the present case, the employer seems to assume that if it had a good reason to fire the employee, the employee should not receive unemployment benefits. However, that is not the law. The three-part test set forth above must be met. Here, it was not. I think there is some real question as to whether the actions of Bontems were actually adverse to the interests of the employer, given its long tolerance of her conduct. However, that issue need not be resolved, since I conclude that Bontems did not act with the requisite degree of culpability.

Our prior cases make it clear that mere "inefficiency, unsatisfactory conduct, or failure of good performance as a result of inadvertence or isolated errors in judgment or discretion" will not suffice to show culpability. *Lane v. Board of Review*, 727 P.2d 206 (Utah 1986). What is required is "volitional acts by an employee who could not have been heedless of their consequences." *Clearfield City v. Department of Employment Security*, 663 P.2d 440, 444 (Utah 1983), *quoted in Lane v. Board of Review*, 727 P.2d 206 (Utah 1986); *accord Trotta v. Department of Employment Security*, 664 P.2d 1195, 1199 (Utah 1983).

In the present case, there was evidence before the Board that Bontems had not contravened any specific directive from management and had not acted in bad faith. Indeed, the uncontradicted evidence, which the majority opinion lays out in some detail, shows that the actions for which Bontems was fired were only a continuation of the conduct she regularly engaged in while performing the functions for which

she was hired, conduct management had previously been willing to tolerate. Under our decisions in *Kehl v. Board of Review,* 700 P.2d 1129 (Utah 1985), and *Lane,* such conduct under such circumstances is not sufficient to support a finding of the culpability required to deny benefits.

Since the Industrial Commission could properly have found that Bontems' conduct did not show culpability, I would affirm its decision. However, I would not ground that affirmance on the basis relied upon by the Commission—that Bontems simply lacked the talents necessary to deal with those she encountered on the job and that she could not, therefore, control herself. I disagree that our prior cases sanction any such expansive exculpation of an employee who lacks self-control.

HOWE, Justice: (dissenting).

I dissent. I do not believe that the evidence can be viewed in any way other than that the claimant was discharged for "just cause."

At the time of her termination, claimant managed a fast-food restaurant. On February 20, 1985, her employer met with her to discuss the following complaints concerning her behavior: (1) throwing register tape at an employee who was having difficulty with the cash register, (2) throwing ice, (3) using profane language at employees and in the presence of customers, (4) throwing food at a new employee because he had not wrapped it properly, (5) temper tantrums in the presence of customers, and (6) a drop in the gross receipts of the restaurant. The employer had concluded, based on a customer survey he had made, that claimant's behavior and bad language were keeping customers away. Although the claimant did not agree with all of these allegations, she did acknowledge that she had engaged in these kinds of behavior on certain occasions. She also acknowledged the use of profane language, loss of temper, and her difficulty dealing with employees during business hours in the presence of customers. She also was insubordinate. Her employer testified that he had experienced his most distasteful phone call during his twenty-three years in the restaurant business when he called the claimant to reprimand her for being abusive with his supervisor and staff. She had been counselled several times about her problems. She was aware of her employer's concern. Finally, her employer placed her on vacation so that he could evaluate whether to continue her in his employment, as well as to give her an opportunity to reflect on her behavior. He directed her to stay away from the restaurant during this period. She violated his order and entered the restaurant, prompting her immediate termination.

The administrative law judge and the Board of Review concluded that claimant's poor conduct was not within her power and capacity to control or prevent. Consequently, it was determined that her discharge was not for "just cause" and that she was entitled to receive unemployment compensation.

I must dissent from those conclusions. I think it is nothing short of gross rationalization to excuse persons in management from using profane language, losing their tempers, and being abusive towards employees on the spurious ground that they have no control over their conduct. No contention is made that the claimant was not of average intelligence or that she lacked mental capacity. Indeed, the fact that she had been a manager for her employer for years and understood well the technical details of her work would argue otherwise. To excuse her from her conduct and language which stem from her lack of self-discipline and control is to allow her to escape the responsibilities which all adults in the work force must bear, particularly an adult who wishes to act in a management or supervisory capacity. Her abusive conduct was more than merely inefficiency or failure of performance as a result of lack of ability, inadvertence, ordinary negligence, or good faith error, all of which we held to be non-disqualifying misconduct in both *Continental Oil Co. v. Board of Review,* 568 P.2d 727 (Utah 1977)

and *Martin v. Department of Employment Security,* 682 P.2d 304 (Utah 1984).

The Board of Review found support for its excuse of the claimant's lack of self-control in the statement made by her employer which is quoted in the majority opinion. That reliance was misplaced. His statement was only that he did not think the claimant was "malicious" or that her actions were "willful." Those comments, coming from a relieved employer, were charitable but in no way form a basis for the Board's conclusion that claimant was unable to conform her speech and conduct to a standard of acceptable behavior. Even the claimant did not testify that she was unable to control herself. Moreover, to constitute "just cause" for discharge, the employee's conduct need not rise to the level of "malicious" or "willful."

I find that the culpability, knowledge, and control factors outlined in *Kehl v. Board of Review,* 700 P.2d 1129, 1133–34 (Utah 1985), were met and satisfied here, and that therefore just cause existed for the claimant's discharge. She had knowledge that her behavior was unacceptable. She had been counselled on previous occasions. Her outbursts of temper and ill-mannered remarks to customers and employees were clearly within her power to control, if she wanted to do so. Her failure to conform after repeated warnings constituted culpable behavior that was clearly adverse to the employer's interests. In a competitive marketplace, customer goodwill and employee loyalty and morale are valuable assets. An employer cannot allow those assets to be put in jeopardy because a manager refuses to act civilly toward others. The majority argues that because her ill behavior did not reduce gross receipts in 1984, there is no reason to think that her behavior was responsible for the drop in receipts in early 1985. That does not follow. The seeds of misconduct sown in 1984 produced their harvest in 1985. Even at the time of the hearing on claimant's application for benefits, which was held two months after her discharge, the receipts had not rebounded although other restaurants owned by the employer had recovered from a seasonal slump. The employer had an independent firm make a market-track study of the restaurant and found considerable negative customer reaction. The claimant was at the core of the problem and the employer had every "just cause" to remove her.