**CHRYSLER DODGE COUNTRY, U.S.A., a Utah corporation, Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY and Scott B. Kern, Defendants.**

No. 870268–CA.

Court of Appeals of Utah.

March 17, 1988.

---

N. George Daines (argued), Daines & Kane, Logan, for plaintiff.

K. Allen Zabel, Asst. Atty. Gen., Lorin R. Blauer (argued), Sp. Asst. Atty. Gen., Dept. of Employment Sec., Salt Lake City, for defendants.

Before BENCH, DAVIDSON and GARFF, JJ.

## OPINION

GARFF, Judge:

Plaintiff, Chrysler Dodge Country, U.S.A., appeals an adverse decision of the Industrial Commission Board of Review (Board) which granted unemployment benefits to claimant Scott B. Kern, finding that he was discharged from his employment for reasons which are not disqualifying under Utah Code Ann. § 35-4-5(b)(1) (1987). The Board determined that plaintiff created claimant's unemployment and, therefore, was ineligible for relief under Utah Code Ann. § 35-4-7(c)(3)(F) (1987).

Claimant, an auto body repairman, had a work agreement with plaintiff which did not guarantee claimant a set wage, but provided that he would be paid twelve dollars per hour on available body work, payable when it, and any associated mechanical work were completed. Employees other than claimant were responsible for performing the mechanical work. Claimant worked for plaintiff under these terms from April 5, 1984 to January 15, 1987.

In December 1986, the workload at plaintiff's body shop dropped substantially. Because of lack of work, claimant took a five day vacation over the Christmas holidays. However, plaintiff contracted out other available body work to another shop during December. When claimant returned to work on January 1, 1987, he was denied payment for body work he had completed in December until the associated mechani-cal work was finished, and was told that no other work would be available until January 19, 1987.

Claimant reported to work on January 19, 1987 and discovered that the expected work was not available until January 21, 1987. This left claimant with no work for which he could receive compensation under his contract.

Claimant then spoke with plaintiff's service manager concerning his inability to earn a living without work. During this conversation, claimant questioned whether he should continue to work for plaintiff. Claimant then met with plaintiff's owner and controller, demanded his pay check, expressed dissatisfaction with his contract, and informed them that he was looking for other employment. With no other work to do, claimant left the shop to have lunch with his father. Upon his return, claimant found himself locked out of the shop.

On January 21, 1987, claimant called plaintiff to inquire about the work that was to be available that day, but the service manager explained that because he thought claimant had quit, he had contracted the job out to another shop. Later that day, claimant picked up his tools from plaintiff's body shop. Plaintiff then closed its body shop permanently, and now contracts out all body work to other shops.

Plaintiff asserted that, prior to this time, it had not planned to terminate claimant's employment even though the record indicates its concern that the body shop had been operating at a loss for some time. Instead, plaintiff stated that it interpreted claimant's actions of January 19, 1987 to mean that claimant had quit, basing its interpretation upon claimant's demand for his pay check before going to lunch with his father and claimant's verbal exchange at the shop, during which claimant told his supervisor to "stick the job up [his] ass."[1]

---

1. The record indicates that these facts were not unequivocal indices that claimant intended to quit. First, the record demonstrates that claimant had a pay check coming for previously completed work, and that January 19, 1987, the date on which claimant had asked for his check, was a normal pay day. Second, the verbal exchange between claimant and his supervisor, even including the inflammatory statement, when taken in context, did not necessarily indicate any intention on the part of claimant to quit.

On the other hand, claimant contends that plaintiff was forcing him to quit by contracting out work which claimant could have done. Further, claimant asserts that he had no intention of terminating his employment relationship with plaintiff, citing behavior inconsistent with intent to quit his job: First, he returned to the shop after having lunch with his father. Next, he called the shop on January 21, 1987, to see if the work scheduled for that day had come in. Finally, he did not return to collect his tools until after plaintiff had informed him that all available work had been contracted out to other shops.

Claimant applied for unemployment benefits and began receiving them on January 18, 1987. A hearing was held on the issue of whether claimant voluntarily quit. On April 9, 1987, the appeal referee (referee) ruled that claimant had voluntarily quit, denied him unemployment benefits, and assessed him $1,773 for overpayment of benefits pursuant to Utah Code Ann. § 35–4–6(e) (1987).

Claimant appealed. The Board adopted the referee's findings of fact but reversed his decision determining that claimant was eligible for benefits, set aside claimant's $1,773 overpayment obligation, and held plaintiff liable under section 35–4–7(c)(3)(F) for benefit charges in connection with claimant's claim.

The parties raise two issues on appeal: (1) May the Board substitute new findings of fact for the referee's findings, relying on new evidence submitted to it in the form of claimant's request for appeal? (2) Is the Board's decision that claimant did not voluntarily quit supported by substantial evidence?

Plaintiff asserts that the referee serves as the trier of fact and the Board as an appellate court, thus limiting the Board's ability to make new factual findings and requiring it to defer to the referee's factual findings. Although plaintiff cites no case law or statutory authority supporting its assertion, the Utah Supreme Court rejected a similar argument in *Continental Oil Co. v. Board of Review of Indus. Comm'n*, 568 P.2d 727, 729 (Utah 1977).

■ The appellant in *Continental Oil*, citing Utah Code Ann. § 35–4–10(i) (1974), asserted that since the "Board of Review acts in an appellate capacity [it] should therefore adhere to the standard in the statute that the findings of fact are conclusive if supported by the evidence." *Id.* at 729. The Utah Supreme Court found that deference to factual findings pursuant to section 35–4–10(i) was required only in *judicial*, not in administrative proceedings. *Id.* In contrast, the Court noted that, pursuant to Utah Code Ann. § 35–4–10(d)(2) (1974), the Board was to "affirm, modify or reverse the findings, conclusions and decision of the appeal referee" on the basis of "such additional evidence as it may direct be taken." Utah Code Ann. § 35–4–10(d)(2). Even though section 35–4–10 has subsequently been amended, the relevant portions of the current statute are substantially the same.[2] We, therefore, reject plaintiff's argument and hold that the Board is a fact-finding body which has statutory authority to direct the taking of new information, to make new findings of fact, to draw different conclusions of law, and to

---

**2.** The 1987 version of Utah Code Ann. § 35–4–10(i) discusses judicial review in the Court of Appeals. The relevant language reads as follows: "In any judicial proceeding under this section, the findings of the commission and the board of review as to the facts if supported by evidence, are conclusive and the jurisdiction of the court is confined to question [sic] of law." The previous 1974 version, on which *Continental Oil* was based, stated: "In any judicial proceeding under this section the findings of the commission and the board of review as to the facts if supported by evidence shall be conclusive and the jurisdiction of said court shall be confined to questions of law."

Similarly, the relevant portion of the 1987 version of section 35–4–10(d)(2) reads as follows concerning the Board's role: "Upon appeal the board of review may on the basis of the evidence previously submitted in the case, or upon the basis of any additional evidence it requires, affirm, modify, or reverse the findings, conclusions, and decision of the appeal referee." The 1974 version says: "Upon appeal the board of review may on the basis of the evidence previously submitted in such case, or upon the basis of such additional evidence as it may direct to be taken, affirm, modify or reverse the findings, conclusions and decision of the appeal referee."

reverse decisions of the referee. *See also Gregory v. Bernardi,* 125 Ill.App.3d 376, 80 Ill.Dec. 706, 465 N.E.2d 1052 (1984).

Review of the record in this case shows that the Board relied entirely upon the referee's factual findings and, indeed, did not take any new evidence or make any new findings of fact. However, in determining that claimant had not left his job voluntarily, it drew a different conclusion than the referee from the same set of facts. In so doing, the Board was well within its statutory authority.

Plaintiff next contends that the Board's determination that claimant was eligible for benefits is not supported by the record. "Whether an employee left work at his own volition or at that of the employer is a question of fact." *Lanier v. Industrial Comm'n,* 694 P.2d 625, 628 (Utah 1985).

The standard of review is as follows: "In any judicial proceeding under this section, the findings of the commission and the board of review as to the facts if supported by evidence shall be conclusive and the jurisdiction of said court shall be confined to questions of law." Utah Code Ann. § 35–4–10(i) (1987).[3] The Utah Supreme Court has consistently interpreted this provision to mean that the Board of Review's findings of fact are conclusive and binding, and are to be sustained if supported by competent and substantial evidence on the record. *Whitcome v. Dep't of Employment Sec.,* 564 P.2d 1116, 1118 (Utah 1977); *Salt Lake City Corp. v. Dep't of Employment Sec.,* 657 P.2d 1312, 1315 (Utah 1982); *Northwest Foods Ltd. v. Bd. of Review of Indus. Comm'n,* 731 P.2d 470, 471 (Utah 1986). Thus, in reviewing this decision, this court will not substitute its own judgment by "[choosing] between conflicting facts" and will not overturn the Board's findings unless they are without substantial support in the record. *Northwest Foods,* 731 P.2d at 471.

The record contains substantial but controverted evidence to support the Board's finding that claimant did not intend to terminate his employment relationship with plaintiff and that plaintiff created claimant's unemployment by assigning body shop work out to other shops. The facts plaintiff relies on do not rise to the level of demonstrating that the Board's decision was not supported by the evidence. Because we sustain the Board's determination that claimant was entitled to unemployment benefits, we also conclude that plaintiff is ineligible for relief of charges pursuant to section 35–4–7(c)(3)(F).

We, therefore, affirm the Board's determination that claimant was entitled to unemployment compensation and that the $1,773 overpayment assessed against claimant should be set aside. We hold plaintiff liable for benefit charges to claimant. No costs awarded.

BENCH and DAVIDSON, JJ., concur.

---

**3.** Since this action arose, Utah has adopted Utah Code Ann. § 63–46b–1, et seq., the Administrative Procedures Act, effective January 1, 1988. However, Utah Code Ann. § 63–46b–22(2) (1987) provides that "[s]tatutes and rules governing agency action, agency review, and judicial review that are in effect on December 31, 1987, govern all agency adjudicative proceedings commenced by or before an agency on or before December 31, 1987, even if those proceedings are still pending before an agency or a court on January 1, 1988." Therefore, we apply the law in effect at the time this matter arose.