Edward J. McLaughlin, J.
Both cases come before the court on petitions filed by the children’s protective unit of the Onondaga County Department of Social Services. In Rodney *678 C., the petition was brought against the mother alleging abuse. In the M. children, a neglect petition was brought against the mother. The cases present to the court the recurring problem of evaluating parental discipline. Specifically, the cases demonstrate the difficulty encountered in determining what is reasonable corporal punishment and the difficulty in weighing the many factors that must be considered in establishing the point at which corporal punishment becomes excessive, and thus, not privileged.
FACTS
A. RODNEY C.
The facts of the case as determined by the court are that Rodney C., a boy of seven, who is in a special education program, was reported by school officials to the child protective unit on March 7, 1977, as a suspected case of child abuse. A child protective worker who examined Rodney at the school found Rodney’s back criss-crossed with 20 pronounced marks and six marks with a slight bit of dry blood on them. He also noticed faded criss-cross marks on the child’s back. Later, Rodney was taken to Up-State Medical Center where a medical report dated March 8, 1977 reported, "numerous linear lesions criss-cross over the entire upper and lower back.” The marks were "reddish brown”. Similar marks, "horizontal in distribution”, were found on the child’s legs and on his left upper arm and forearm and on his right forearm. There was also a bruise on his left temple.
Rodney’s mother testified that on Sunday, March 6, 1977, she put Rodney on a bed, stripped to his underwear, and beat him with a branch taken from a bush until he finally got up and broke the switch. She admitted to previously whipping Rodney with a belt.
B. M. CHILDREN
Michael M. is a boy of 11, and his brother, Raymond, is a boy of 10. Previously Michael and Raymond were found to be neglected, and they are currently under the supervision of the Commissioner of Social Services, living at home. The children are participating in play therapy under the supervision of a psychiatric social worker. The mother has weekly contacts with the health center where the children are in therapy.
The mother testified that she punished the children by having them bend over and hold their ankles, while keeping *679 their knees locked. She had them maintain this position for up to half an hour. She said that she had been punished in this manner when she was a child, and that this was her regular method of punishment. Both of the children scream while undergoing this discipline and R. vomits. During the last year both boys have been punished in this way three times, and R. has been punished by this method four times.
LAW
A. COMMON-LAW PRIVILEGE/NEW YORK LAW
Parents have long been deemed to be privileged to use physical force upon their children. (Restatement, Torts 2d, § 147.) This privilege, however, has not given parents an unlimited license to use physical force as fancy leads them. Rather, under the common law an objective standard of reasonableness has evolved, and the use of parental physical force must be measured against such an objective standard to determine if it is, or is not, excessive. (Restatement, Torts 2d, § 150.)
Recently the Supreme Court of the United States, in dictum, reviewed the history of the common-law privilege of "reasonable corporal punishment”. (Ingraham v Wright, 430 US 651.) In Ingraham, however, the court did not specifically address the issue of reasonableness. Rather, while holding that the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution did not apply to school children, the court suggested that civil and criminal remedies be relied upon when corporal punishment was thought to be unreasonable. (430 US 651, 664, supra.)
In New York the common-law parental privilege of the use of physical force upon children has been codified. (Penal Law, § 35.10, subd 1.) Such force as a parent is allowed to use on a child, however, is justified only, "to the extent that he reasonably believes it necessary to maintain discipline or to promote the welfare of such person”. (Penal Law, § 35.10, subd 1.)
The common-law parental privilege of the use of physical force upon children[1] is further modified in New York by *680 article 10 of the Family Court Act. Under article 10, a parent or other person legally responsible for the care of a child less than 18 is restrained, inter alia, from "unreasonably inflicting or allowing to be inflicted harm1, or substantial risk thereof, including the infliction of excessive corporal punishment”. (Family Ct Act, § 1012, subd [f], par [i], cl [B].)
These cases do not present a pattern of mistreatment so bizarre or harsh as to fall totally outside civilized boundaries. Rather, we are dealing here with children who have had cruel physical force used upon them by a parent. Our concern, then, is with the reasonableness of the corporal punishment inflicted upon these children.
B. REASONABLENESS
While reasonableness has been the accepted standard in common-law countries against which the use of parental force on a child is to be measured, great difficulty has been encountered by the courts when an attempt is made to clearly articulate the dimensions of reasonable parental " use of physical force. Numerous sources have contributed components to the evolving standard.
Traditionally, the age, sex, physical and mental condition of the child have been factors to consider. (Restatement, Torts 2d, § 150, subd [b].) The use of physical force by a parent is privileged only when it is used for the "training or education of the child or for the preservation of discipline”. (Restatement, Torts 2d, § 151.)[2] When the child does not have the capacity to understand or appreciate the correction, the value of the training, education or discipline is lost upon him and, *681 therefore, the parental privilege of the use of physical force is negated. To illustrate, in an English case where a father whipped his two and one-half-year-old baby daughter with 6 to 12 strokes of a one-inch strap, a court found that, although a father might correct a child, such physical force as the father used upon his daughter was beyond her capacity to understand and, therefore, the corporal punishment was not privileged. (R. v Griffin, 11 Cox 402 [1869].)
Further, the means of punishment employed is a critical factor to be considered. Moderate means have long been equated with reasonableness. For example, in an 1870 Illinois case, the court stated that, "even the power of the parent must be exercised with moderation. He may use correction and restraint, but in a reasonable manner”. (People ex rel. O’Connell v Turner, 55 Ill 280, 285.) In an English case where a teacher struck a child on the head with the the palm of her hand, deafening the child, the court found that while "the blow struck was moderate in the sense that it was not a very violent blow * * * as punishment, it was not moderate punishment”. (Ryan v Fildes, 3 ALL E R 517, 520 [1938].) Moreover, a parent is not privileged "to use a means to compel obedience if a less severe method appears likely to be equally effective”. (Restatement, Torts 2d, § 150, comment d.)
Then too, a punishment may not be unnecessarily degrading. (Restatement, Torts 2d, § 150, comment e.) Nor may it be of a character "which is brutal, or might be regarded as beastly”. (Matter of Carl, 174 Misc 985, 987 [1940].) Nor may it be "protracted beyond the child’s power of endurance”. (Regina v Hopley, 2 F & F 202, 206.)
Also to be considered in assessing what is or is not reasonable corporal punishment is the principle that "force applied * * * primarily for any purpose other than proper training or education of the child or for the preservation of discipline is not privileged”. (Restatement, Torts 2d, § 151.) Thus, force "administered for the gratification of passion or rage” is excessive punishment. (Regina v Hopley, supra, p 206.)
While the standard of reasonable parental use of physical force cannot be stated with categorical precision, certain commissions and omissions clearly negate the parental privilege and constitute the infliction of excessive corporal punish *682 ment. In light of the many factors discussed, this court makes the following findings:[3]
We find that 26 marks on the back of a seven-year-old boy with emotional difficulties, marks which were patently visible three days after the beating was administered, marks that were inflicted while the child was wearing his underwear, is evidence of immoderate and unreasonable corporal punishment and is, thus, excessive. Such use of physical force is not protected by parental privilege. We, therefore, find Rodney C. a neglected child within the meaning of article 10 of the Family Court Act. (Family Ct Act, § 1012, subd [f], par [i], cl [B].) However, the court does not find that the punishment was excessive as- to be life threatening or likely to cause permanent disfigurement and, therefore, the child is not an abused child.
This court also finds that punishment administered to an 11-year-old boy who is undergoing therapy; punishment inflicted by his mother; punishment which requires him to hold his ankles and keep his knees straight for variable lengths of time; punishment which causes him to scream, is a punishment beyond the child’s endurance and a punishment beyond his capacity to understand as correction. We find such correction to be an excessive use of corporal punishment, not protected by parental privilege. We find Michael M. to be a neglected child. (Family Ct Act, § 1012, subd [f], par [i], cl [B].)
Further, this court finds that punishing a 10-year-old boy by forcing him to stay in a contorted position, a position which causes him to scream and to vomit, is not only a punishment beyond the child’s endurance, and a punishment beyond his capacity to understand, but a degrading punishment as well. Moreover, such punishment is hardly a moderate means of *683 correction, and it surely cannot be considered reasonable. Such a procedure is indeed an excessive use of corporal punishment, and it is not protected by parental privilege. We, therefore, find Raymond M. to be a neglected child. (Family Ct Act, § 1012, subd [f], par [i], cl [B].)

. "Maltreatment of children has been justified for many centuries by the belief that severe physical punishment was necessary, either to maintain discipline, to transmit educational ideas, to please certain gods, or to expel evil spirits.” (Radbill, A History of Child Abuse and Infanticide, Battered Child, in the Battered Child 3.) Since about 1825, however, child welfare has been an increasingly popular concern in the United States, and numerous child caring institutions have been established and the *680 juvenile court system created to protect children. (See Thomas, Child Abuse and Neglect, Part I: Historical Overview, Legal Matrix and Social Perspectives, 50 NC L Rev 293; Paulson and Blake, The Abused, Battered, and Maltreated Child: A Review, 9 trauma vol 4 [1967]; Paulson, The Legal Framework for Child Protection, 66 Col L Rev 688.)

. "Discipline” has been used as a shield for maltreatment of children. For instance, Kip Henson’s mother told the police, "that she had a 'discipline problem’ with Kip and that because of this she occasionally 'slapped’ him across the face, 'struck’ him with the husband’s belt and 'spanked’ him with a 'pingpong paddle’; that, when the paddle 'disappeared,’ she used a 'wooden cooking spoon’ and, more recently, her hand”. (People v Henson, 33 NY2d 63, 67.) Authorities who have surveyed the research on the maltreatment of children note that "over the centuries what we now call child abuse has been far closer to the norm than we like to remember * * * Disciplinary methods have been brutal, frequently with the expressed purpose of 'breaking’ the child’s will”. (Hurt, Child Abuse and Neglect: A Report on the Status of the Research, US Dept HEW, Office of Human Dev/Child, 1975, p 5 [DHEW Pub No. (OHD) 74-20].)

. While the court is mindful that cultural diversity and ethnic background may be viewed as variables to be considered while determining what is and what is not reasonable corporal punishment, we would note that such a distinction has not been enunciated by the commentators nor has it been articulated in the cases. Nor is such a bias found in the statute. Indeed, the intent of the State Legislature has clearly been shown by its enactment of a specific purpose for article 10 of the Family Court Act. The Legislature stated that the purpose of the article on abuse and neglect was "to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being”. (Family Ct Act, § 1011.) Without doubt the Legislature intended the statute to apply to all the children in New York State. In R. v Derriviere (53 Cr App Rep 637 [1969]) the court held immigrants must conform to the standard of behavior acceptable in England, and it is not a defense to a charge of assault to show that the standard of parental correction is harsher in the foreign native country.