1999 UT App 157

**STATE of Utah, in the Interest of L.P., a person under eighteen years of age.**

**S.S.P. and R.P., Appellees,**

v.

**State of Utah, Appellant.**

**No. 981535–CA.**

Court of Appeals of Utah.

May 13, 1999.

Jan Graham, Atty. Gen., and John Peterson, Asst. Atty. Gen., Salt Lake City, for Appellant.

John E. Laherty, Laherty & Associates, PC, Salt Lake City, for Appellees.

Martha Pierce and Christine S. Decker, Salt Lake City, Guardians Ad Litem.

Before Judges GREENWOOD, BENCH, and DAVIS.

## OPINION

DAVIS, Judge:

¶ 1 The State of Utah appeals from the Third District Juvenile Court's determination that the State "failed to meet its burden of proving abuse or neglect of the child by clear and convincing evidence." Because the juvenile court did not apply the appropriate statutory definition in determining that L.P. was not an abused child, we remand for proceedings consistent with this opinion.

## BACKGROUND

¶ 2 L.P. is a fourteen-year-old child, the oldest of four children in the household. S.S.P. is L.P.'s natural mother. This appeal arises from the following chain of events. First, during an argument, L.P. was struck in the chest by her mother with "moderately hard force." The next day, L.P. reported the incident to school officials, two of whom observed redness in L.P.'s chest area. Later that day, L.P. reported tenderness and pain in her chest area to Lori Thomassen, a Child Protection Services worker. Upon examining L.P.'s chest area, Thomassen observed no redness. Subsequently, the Utah Division of Child and Family Services (DCFS) took L.P. into protective custody. It was then discovered that two months prior to the incident described above, S.S.P. had struck L.P. in the face with her hand while L.P. was arguing with her sister at church, giving L.P. a swollen lip. After L.P. reported that her mother struck her in the chest, DCFS filed a verified petition alleging that L.P. was an abused child as defined by the Juvenile Court Act under section 78–3a–103(1)(a)(i) of the Utah Code.[1]

¶ 3 At the conclusion of an evidentiary hearing on the petition, the trial judge asked the parties to brief the following issue: "At what point does the parental discipline of a minor child cross over into conduct that constitutes child abuse?" After reviewing the trial briefs, the juvenile court attempted to reconcile the broad definition of an abused child found in the Juvenile Court Act with the right of a parent to inflict corporal punishment. The juvenile court analyzed a number of "abuse-related" statutes [2] and ter-

---

1. An abused child "includes a minor less than 18 years of age who has suffered or been threatened with nonaccidental physical or mental harm." Utah Code Ann. § 78–3a–103(1)(a)(i) (Supp. 1998). We cite to the most recent version of the Utah Code as a convenience to the reader. The portions of the statutes quoted in this opinion were the same, in all material respects, throughout the proceedings.

2. Utah's criminal code, for example, requires a greater showing of harm for an individual to be held criminally responsible for striking a child: "Any person who inflicts upon a child physical injury ... is guilty of an offense." Utah Code Ann. § 76–5–109(3) (Supp.1999). "Physical injury" is defined as a bruise or other contusion of the skin, a minor laceration, or an abrasion. See id. § 76–5–109(1)(c).

Section 53A–11–802 of the Utah Code provides: "A school employee may not inflict or cause the infliction of corporal punishment upon a child who is receiving services from the school, unless written permission has been given by the student's parent or guardian to do so." Id. § 53A–11–802(1) (1997). "'Corporal punishment' means the intentional infliction of physical pain upon the body of a minor child as a disciplinary measure." Id. § 53A–11–801(2).

In addition to the statutes mentioned above that allow a certain measure of physical punishment to be inflicted upon a child without subjecting the actor to a legal penalty, Utah law also expressly *permits* conduct that would otherwise

mination of parental rights cases and then apparently adopted legal standards therefrom, effectively narrowing the definition of an abused child found in section· 78–3a–103(1)(a)(i). In doing so, the juvenile court made the following ruling:

> There really can be no fixed standard for when parental discipline becomes abuse since all children, parents, and circumstances are different. In this case there is no clear and convincing evidence of abuse, but rather clear and convincing evidence of frustration of parents and children trying to deal with each other in heated situations.

In its conclusion, the juvenile court stated, "[t]he State has failed to meet its burden of proving abuse or neglect of the child by clear and convincing evidence."[3] The State now challenges that legal conclusion on the ground that it was based upon a legal definition of abuse not found in section 78–3a–103(1)(a)(i). S.S.P. urges us to approve the definition apparently relied upon by the juvenile court and adopt criteria for determining when corporal punishment of a minor becomes abuse within the scope of section 78–3a–103(1)(a)(i), including the following:

> 1) the need for the application of corporal punishment; 2) the relationship between the need and the amount of punishment administered; 3) the extent of injury inflicted; and 4) whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.

*Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 564 (8th Cir.1988).

## ISSUE AND STANDARD OF REVIEW

¶ 4 The issue before this court is whether the juvenile court properly applied the appropriate definition of an abused child in making its determination that L.P. is not an abused child. This is a question of law that we review under a "correction of error"

standard. *See State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1995). "Although we review [this question] for correctness, we may still grant a trial court discretion in its application of the law to a given fact situation." *Jeffs v. Stubbs*, 970 P.2d 1234, 1244 (Utah 1998).

## ANALYSIS

¶ 5 Under the Juvenile Court Act, an abused child "includes a minor less than 18 years of age who has suffered or been threatened with nonaccidental physical or mental harm." Utah Code Ann. § 78–3a–103(1)(a)(i) (Supp.1998); *accord State in re K.T.S.*, 925 P.2d 603, 604 (Utah Ct.App.1996). We interpret and apply the terms in section 78–3a–103(1)(a)(i) "according to their commonly accepted meaning unless the ordinary meaning of the term results in an application that is either 'unreasonably confused, inoperable, ... or in blatant contradiction of the express purpose of the statute.'" *State v. Souza*, 846 P.2d 1313, 1317 (Utah Ct.App.1993) (quoting *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 590 (Utah 1991)). Because section 78–3a–103(1)(a)(i) is unambiguous, we will not look beyond its plain language to ascertain legislative intent. *See DeLand v. Uintah County*, 945 P.2d 172, 174 (Utah Ct.App.1997) (citations and quotation marks omitted), *cert. denied*, 961 P.2d 326 (Utah 1998). Instead, "[w]e merely assume the Legislature carefully and advisedly chose the statute's words and phrases." *Id.*

¶ 6 The statutes referred to in footnote two, above, and relied upon by the juvenile court, although creating apparently conflicting definitions of what "punishment" of a minor child is permissible, are nevertheless impertinent to this· case. It is incumbent upon the juvenile court to apply the proper definition from the appropriate statute. Although the sections referenced in footnote two indicate that physical punishment of a minor child may be exempt from criminal

---

be criminal if the "actor's conduct is reasonable discipline of minors by parents, guardians, teachers, or other persons in loco parentis." *Id.* § 76–2–401(3) (1995).

3. Despite its ruling on the question of abuse, the juvenile court found jurisdiction based upon dependency, as defined by section 78–3a–103(1)(h) of the Utah Code, due to L.P.'s refusal to return home.

prosecution in certain instances, we are not reviewing a criminal case and therefore criminal statutes are inapplicable. Nor are we reviewing a case involving punishment inflicted upon a minor child by a school official; therefore section 53A–11–802(1) is also inapplicable. Here, we are reviewing a juvenile court proceeding held to determine whether that court may assert jurisdiction over L.P., *see* Utah Code Ann. § 78–3a–104(1)(c) (Supp. 1998), and the concept of varying definitions for varying purposes is not foreign to our jurisprudence. *Cf. Kennecott Copper v. Salt Lake County,* 799 P.2d 1156, 1163 (Utah 1990). Thus, the juvenile court should have applied the definition of an abused child found in the Juvenile Court Act of 1996. *See* Utah Code Ann. § 78–3a–103(1)(a)(i) (Supp. 1998).

¶ 7 The State and Guardian ad Litem agree with the juvenile court's observation that "all children, parents and circumstances are different." They argue that precisely for that reason, the broad definition of an abused child found in section 78–3a–103(1)(a)(i) is necessary, and that the focus of the juvenile court should be on evidentiary findings to determine whether, by clear and convincing evidence, a child has "suffered or been threatened with nonaccidental physical or mental harm." *See* Utah Code Ann. § 78–3a–103(1)(a)(i) (Supp.1998). We agree. Because there are a myriad of circumstances with countless permutations, which may or may not justify intervention of the juvenile court, it is essential that the definition of an abused child remain broad so the juvenile court can effectively apply section 78–3a–104(1)(c).[4]

¶ 8 Rather than attempt to change the definition of an "abused child," the juvenile court must instead focus upon making detailed findings supporting its ultimate decision so that a body of case law can be developed. *Cf. First Nat'l Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314, 320 (1973) (stating "as the body of case law develops, we can lay down more specific ... rules"); *Myrick v. James,* 444 A.2d 987,

997 (Me.1982) (" 'What is needed is ... an attempt to develop a body of case law that gives courts improved guidance' ") (citation omitted). Such factual findings may include, but are not limited to, the following: whether the acts complained of were in reasonable discipline of a minor by a parent or one in loco parentis, *see* Utah Code Ann. § 76–2–401(3) (1995); evidence of any bruises, contusions, or abrasions on the child, *see id.* § 76–5–109(1)(c) (Supp.1998); "the need for the application of corporal punishment; ... the relationship between the need and the amount of punishment administered; ... the extent of injury inflicted; ... whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm," *Wise,* 855 F.2d at 564; evidence of unreasonably cruel punishment such as beatings with a belt, paddle, hose, or other object, *see Wood v. State,* 248 Ark. 109, 450 S.W.2d 537, 542 (1970); whether the child has been provided with suitable food and clothing, *see State v. Johnson,* 181 Ariz. 346, 890 P.2d 641, 645 (Ct.App.1995); evidence of verbal threats or verbal abuse; and whether the incident was isolated or rather a step in an apparent progression of mistreatment. None of the factors listed above is necessarily dispositive of whether a minor is an abused child within the meaning of section 78–3a–103(1)(a)(i). Instead, these evidentiary factors should guide the juvenile court as it exercises its broad discretion in making that determination.

¶ 9 In addition, comprehensive findings will enable an appellate court to review abuse determinations more effectively. For example, if the juvenile court's findings support an ultimate finding that the conduct complained of was in reasonable discipline of a minor, the inquiry may end. The juvenile court has a vantage point that enables it to determine whether punishment of a minor child is reasonable discipline or falls within the ambit of section 78–3a–103(1)(a)(i). Because of the complex contextual nature of child abuse pro-

**4.** Section 78–3a–104(1)(c) provides, in pertinent part, that "[e]xcept as otherwise provided by law, the juvenile court has exclusive original jurisdiction in proceedings concerning: ... (c) a minor who is an abused child ... as ... defined in Section 78–3a–103." Utah Code Ann. § 78–3a–104(1)(c) (Supp.1998).

ceedings, and the significant impact of a determination of abuse or neglect,[5] the juvenile court is in a far better position to evaluate the evidence than an appellate court, and the best interests of the children and families involved in these proceedings will be served by preserving the broad discretion of the juvenile court.

¶ 10 In this case, it is evident that the juvenile court did not apply the proper statutory definition in determining that L.P. is not an abused child. On remand, that court should apply the definition supplied by section 78–3a–103(1)(a)(i) to detailed findings in order to determine whether L.P. is an abused child.

## CONCLUSION

¶ 11 Insofar as the juvenile court deviated from the definition in section 78–3a–103(1)(a)(i) in determining whether L.P. is an abused child, it committed an error of law. Accordingly, we remand for entry of such additional findings as the juvenile court deems appropriate and for application of the definition in section 78–3a–103(1)(a)(i) to those findings.

¶ 12 I CONCUR: PAMELA T. GREENWOOD, Judge.

BENCH, Judge (concurring):

¶ 13 In appealing this case, the State urges that "abuse" for purposes of juvenile court jurisdiction over a child is different from the "abuse" that justifies terminating parental rights. I agree that the trial court erred in blending the two standards. I therefore concur in remanding the case for additional findings.

¶ 14 "The relationship between parents or guardians and children is a delicate and complex one, and standards designed to regulate this relationship must necessarily provide some flexibility while at the same time effectuating the state policy of protecting children from abuse." *People v. Jennings*, 641 P.2d 276, 280 (Colo.1982). In deciding whether L.P. was abused, the trial court properly discussed parental discipline. As framed by the trial court, "The issue before the court is: at what point does parental discipline become abuse?"

¶ 15 Despite the broad language of section 78–3a–103(1)(a), our common law dictates that reasonable discipline by a parent cannot constitute abuse. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 659–61, 97 S.Ct. 1401, 1406–07, 51 L.Ed.2d 711 (1976) (outlining common law history of "reasonable corporal punishment"); *Bowers v. State*, 283 Md. 115, 389 A.2d 341, 348 (Ct.App.1978) (recognizing common law principle of parent's use of reasonable force in discipline of child); *In re Rodney C.*, 91 Misc.2d 677, 398 N.Y.S.2d 511, 514 (N.Y.Fam.Ct.1977) ("[U]nder the common law an objective standard of reasonableness has evolved...."); Restatement (Second) of Torts §§ 147, 150 (1965) (outlining factors of reasonable parental discipline); *see also* Utah Code Ann. § 53A–11–802(1) (1997) (prohibiting infliction of corporal punishment upon a child "unless written permission has been given by the student's parent or guardian to do so").

¶ 16 The principle that reasonable parental discipline cannot be abuse is expressly included in our criminal law. *See* Utah Code Ann. § 76–2–401(3) (1995) (excluding from criminal conduct reasonable discipline of minors by parents). It is also implicitly included in the Juvenile Court Act. *See* Utah Code Ann. § 78–3a–103(1)(n)(ii) (Supp.1998) (defin-

---

5. *See* Utah Code Ann. § 78–3a–103(1)(q)(i)(D) (Supp.1998) (stating that "neglected child" is minor "who is at risk of being a neglected or abused child ... because another minor in the same home is a[n] ... abused child"); *id.* § 78–3a–301(1)(a) ("If a minor has previously been adjudicated as abused, neglected, or dependent, and a subsequent incident of abuse, neglect, or dependency occurs, that fact constitutes prima facie evidence that the child cannot safely remain in the custody of his parent."); *id.* § 78–3a–301(1)(c) ("If a parent has received actual notice that physical ... abuse by a person known to the parent has occurred, and there is evidence that the parent has allowed the child to be in the physical presence of the alleged abuser, that fact constitutes prima facie evidence that the child is at substantial risk of being physically ... abused."); *id.* § 78–3a–301(1)(j) (Supp.1998) (stating DCFS may remove child from custody of natural parent if "the minor or another minor residing in the same household has been neglected").

ing legal custody to include right and duty to train and discipline minor). The fact that the principle was not expressly stated in the Juvenile Court Act does not delete it from our common law. *See* Utah Code Ann. § 68–3–1 (1996) (adopting common law as rule of decision in Utah courts); *see also Cache County v. Beus,* 978 P.2d 1043, 1047 (Utah Ct.App.1999) (" 'We have frequently stated that we will not construe a statute as abrogating the common law unless the statute clearly expresses such an intention.' ") (quoting *Cooperman v. MacNeil,* 123 N.H. 696, 465 A.2d 879, 882 (1983)).

¶ 17 Rather than analyzing whether the parent's actions in, this case constituted rea-sonable discipline, the trial court ruled that mere frustration in heated situations cannot be abuse. Such a ruling is insufficient to adequately determine the question. I therefore concur in remanding the case for a more complete explanation as to why the parent's actions are to be considered reasonable discipline rather than abuse.