2010 UT App 335

**K.Y., Appellant,**

v.

**DIVISION OF CHILD AND FAMILY SERVICES, Appellee.**

No. 20090991–CA.

Court of Appeals of Utah.

Nov. 26, 2010.

Brad C. Smith, Ogden, for Appellant.

Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and CHRISTIANSEN.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 K.Y. appeals the juvenile court's order making a substantiated[1] finding of neglect against her. We reverse.

## BACKGROUND

¶ 2 On October 30, 2007, DCFS received a report that K.Y., a teacher, had physically abused a student in her third grade class (Student). On the second day of school, Student was not paying attention and kept "taking things out of her desk." K.Y. admonished Student, but Student continued to riffle through her desk in a disruptive manner. K.Y. then told Student, in a "loud voice" that "sounded mean" to Student, that K.Y. was going to tape Student's hands to the desk.[2] Student thought that K.Y. was "kind of mad." K.Y. placed one six-inch piece of scotch tape across each of Student's wrists and attached the ends of the tape to the desk. According to K.Y., Student "was giggling at the time." Although Student could still move her hands, she was reportedly afraid to do so until K.Y. gave her permission. K.Y. waited approximately two minutes before she allowed Student to remove the tape, after which Student's behavior was "totally different" according to K.Y.

¶ 3 That evening, Student reported the event to her mother (Mother). According to Mother, Student was upset, embarrassed, and scared by the incident. Mother testified that Student indicated that "everybody was looking at her and laughing." Mother reported the incident to the school principal, and Student was transferred out of K.Y.'s class. However, later in the school year, Mother requested that Student be allowed to participate with the rest of her class in "rotations" taught by K.Y.[3]

¶ 4 In early October, K.Y.'s school district received letters from three parents complaining about K.Y.'s behavior toward their children. One of the letters was from Mother.[4] K.Y. was verbally reprimanded by the school district and told to refrain from engaging in similar discipline in the future. The principal and a school district representative testified at trial that scotch taping Student's wrists was a minor violation of the school district's policy against corporal punishment.

¶ 5 Upon learning of the incident, DCFS appointed an investigator to look into the matter. DCFS also offered counseling services for Student, which Mother declined. The DCFS investigator interviewed Student and Mother in November 2007. The investigator recorded her interview with Student. However, the transcript of that interview, which was prepared in February 2008, is not part of the record on appeal, and only portions of it are contained in the trial transcript. When contacted, K.Y. would not discuss the matter with the investigator, instead requesting that all communication go through her attorney. The investigator "never made any further efforts to contact" K.Y. or her attorney.

¶ 6 On November 28, 2007, DCFS made a supported[5] finding of "Emotional Maltreat-

---

1. " 'Substantiated' ... means a judicial finding based on preponderance of the evidence that abuse or neglect occurred." Utah Code Ann. § 62A–4a–101(31) (Supp.2010).

2. Student did not testify. Student's mother and a DCFS investigator testified to what Student had told them about the incident.

3. Rotations are a program where each teacher for a particular grade is assigned a subject to teach all of the classes in that grade.

4. The other letters were not investigated or were deemed unsupported by DCFS.

5. " 'Supported' means a finding by [DCFS] based on the evidence available at the completion of an

ment–General." [6] The investigator and her supervisor determined that the case was supported for emotional maltreatment "due to the child expressing fear and embarrassment from the other kids laughing" but that it was "unsupported for physical abuse due to the lack of injury or pain from the incident." The supported finding for "Emotional Maltreatment–General" was affirmed by an administrative law judge (ALJ), and K.Y. appealed to the juvenile court.

¶ 7 During trial de novo in the juvenile court, the DCFS investigator admitted that although Student indicated that the other children were laughing, Student did not state that "they were laughing at her." In her recorded statement, which was read at trial, Student reported that the other children "were paying attention to their teacher," "happy," and "laughing." The investigator indicated that she inferred from this statement, and from Student's answers to questions the investigator asked after turning off the recording device, that the children were laughing at Student. During closing argument, DCFS suggested, for the first time, that if K.Y.'s conduct did not rise to the level of abuse, it could be substantiated as neglect.

¶ 8 After taking the matter under advisement, the juvenile court entered a substantiated finding of "neglect-emotional maltreatment." The juvenile court concluded that Student had been "subjected to neglect," that K.Y. taped Student's hands "to embarrass or humiliate [Student] and therefore modify her behavior," and that K.Y. had engaged in a "serious incident of psychologically destructive behavior." K.Y. appeals the decision of the juvenile court.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 K.Y. argues that emotional maltreatment is not a valid basis for the juvenile

court's decision because it is purely a creation of DCFS and is not encompassed within the statutory definition of either abuse or neglect. "[W]hether the juvenile court properly applied the appropriate definition ... is a question of law that we review under a correction of error standard. Although we review [this question] for correctness, we may still grant a trial court discretion in its application of the law to a given fact situation." *In re L.P.*, 1999 UT App 157, ¶ 4, 981 P.2d 848 (second alteration in original) (citation and internal quotation marks omitted).

■ ¶ 10 K.Y. further argues that even if emotional maltreatment is a valid category of abuse or neglect, there was insufficient evidence to support the juvenile court's findings as to essential elements of emotional maltreatment. We will overturn the juvenile court's findings of fact only when "the result is against the clear weight of the evidence or leaves us with a firm and definite conviction that a mistake has been made." *In re Z.D.*, 2007 UT App 33, ¶ 4, 156 P.3d 844 (internal quotation marks omitted).

## ANALYSIS

I. The Juvenile Court Erred by Basing Its Decision on DCFS's Practice Guidelines Rather than the Statutory Definitions.

■ ¶ 11 The statutory authority under which DCFS investigates and reports incidents of abuse and neglect does not include any explicit reference to "emotional maltreatment." *See* Utah Code Ann. §§ 62A–4a–101 to –1010 (2008 & Supp.2010). Rather, emotional maltreatment is defined in DCFS's Practice Guidelines (the Guidelines), *see* Utah's Division of Child & Family Services, Practice Guidelines, Definitions 14 (2009) [hereinafter *DCFS Guidelines*].[7]

A. Demeaning or derogatory remarks that affect or can be reasonably expected to affect a child's development of self and social competence.

B. Engaging in or threatening the child with conduct that causes or can reasonably be expected to cause the child emotional harm, such as threatening harm, rejecting, isolating, terrorizing, ignoring, or corrupting the child (e.g.,

---

investigation that there is a reasonable basis to conclude that abuse, neglect, or dependency occurred." *Id.* § 62A–4a–101(33).

6. The juvenile court incorrectly stated that DCFS had made a supported finding for "neglect."

7. The Guidelines define "emotional maltreatment" as "[c]onduct that subjects a child to psychologically destructive behavior," including, but not limited to,

K.Y.'s main assertion on appeal is that the juvenile court erroneously based its substantiated finding of neglect on emotional maltreatment as defined by the Guidelines, which were adopted by DCFS for internal use and were neither codified by statute nor promulgated as rules pursuant to the Utah Administrative Rulemaking Act (the UARA). *See generally* Utah Code Ann. § 63G–3–301 (Supp.2010) (prescribing administrative rulemaking procedures). Although DCFS supported the allegation against K.Y. as "Emotional Maltreatment–General" and sought a substantiated finding of "emotional maltreatment" in the juvenile court, the State now agrees that the Guidelines "do not have the force of law, or even agency rule." The State correctly notes that the Guidelines include a disclaimer that they "are not intended to expand or abridge [statutory] definitions or judicial opinions," *DCFS Guidelines* at 1. Nevertheless, the State argues that emotional maltreatment, as defined by the Guidelines, is fairly encompassed by the statutory definitions of abuse and neglect.

■ ¶ 12 "[I]n construing any statute, we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous." *Garcia v. Garcia*, 2002 UT App 381, ¶ 4, 60 P.3d 1174 (internal quotation marks omitted). Here, the juvenile court never considered the statutory definitions of abuse or neglect. Rather, it focused on the definition of emotional maltreatment as set forth in the Guidelines, substantiating a finding against K.Y. of "neglect-emotional maltreatment" because K.Y.'s "actions constitute[d] a serious incident of psychological[ly] destructive behavior." *See generally DCFS Guidelines* at 14 (defining emotional maltreatment as "conduct that subjects a child to psychologically destructive behavior" and indicating that it "may be shown by a pattern of psychologically destructive behavior or by a single serious incident of such behavior"). In doing so, the juvenile court used the informal Guidelines as the standard against which K.Y.'s conduct should be measured. We agree with K.Y. that this analytical approach was incorrect.

¶ 13 In *Lane v. Board of Review*, 727 P.2d 206 (Utah 1986), the Utah Supreme Court criticized the Industrial Commission Board of Review's reliance on a proposed administrative rule to find that an employee was terminated for "just cause" and was, therefore, ineligible for unemployment benefits. *See id.* at 208. Despite its previous conclusion that the proposed rule was a reasonable interpretation of the governing act, *see Kehl v. Board of Review*, 700 P.2d 1129, 1134 (Utah 1985), the supreme court held that just cause should have been considered "solely under the provisions of [the applicable statutory provision]," *Lane*, 727 P.2d at 208. Acknowledging, that "[i]t may be suggested that we are engaging in a rather formalistic exercise," the supreme court explained that it was "only reaffirming [that] . . . administrative agencies must comply with the appropriate statutory requirements if their rules are to have any force and effect." *Id.* at 210 n. 7. Similarly, the Guidelines here could not "provide a lawful basis for the [court]'s decision." *See id.* at 208.

¶ 14 Nevertheless, the State contends that any error in the juvenile court's reliance on the Guidelines is harmless because emotional maltreatment, as defined by the Guidelines, is encompassed by the statutory definitions of both abuse and neglect. *See generally id.* at 210 n. 7 (holding that erroneous application of an unadopted rule in other cases would not alter the outcome of those cases because the rule was a reasonable interpretation of the relevant statute). In considering whether the State is correct that emotional maltreatment falls within the statutory definition of abuse or neglect,[8] we begin with the

---

harming an animal or threatening to harm an animal in the presence of a child).
C. Domestic violence related child abuse. . . .
D. Violence observed by the child between a caregiver and another in the presence of the child that may include (but is not limited to) the abuse of animals.
E. Providing a child with materials harmful to a child. . . .

F. Providing cigarettes to a child.
*DCFS Guidelines* at 14; *cf.* Utah Admin. Code R512–202–2(3).

**8.** Although a juvenile court's finding of abuse or neglect must ultimately be based on the statutory definitions, rule R512–202–2 of the Utah Administrative Code directs DCFS investigators to "categorize the information into an allegation cate-

plain language of the statute. *See generally Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints,* 2007 UT 42, ¶ 47, 164 P.3d 384 ("When the language of the statute is plain, other interpretive tools are not needed."). We resort to the Guidelines only if necessary to resolve remaining ambiguity. *See id. See generally Nelson v. Betit,* 937 P.2d 1298, 1306 (Utah Ct.App.1997) (finding the Department of Health Services' social security policy "helpful" in interpreting social security legislation because it was an "authoritative, administrative interpretation of the statute the [administrative agency] ha[d] been delegated to implement" and was "reasonable and consistent with the overall design and purpose" of the legislation). Finally, we consider whether the facts of this case could support a finding of emotional maltreatment consistent with the statutory requirements of either abuse or neglect.

## II. Emotional Maltreatment May Constitute Abuse but Not Neglect.

¶ 15 The Utah Legislature delegated to DCFS the authority to address specific categories of conduct against minors. *See* Utah Code Ann. § 62A–4a–103 (Supp.2010) (creating DCFS). Two of those categories are abuse and neglect. *See id.* § 62A–4a–105(6) (delegating to DCFS the power to "enforce state and federal laws enacted for the protection of abused, neglected, dependent, delinquent, ungovernable, and runaway children, and status offenders"). The legislature has also delegated to DCFS the authority to investigate reports of abuse or neglect to determine whether they are "supported, unsupported, or without merit." *See id.* § 62A–4a–409(3). For purposes of making that determination, the terms "abuse" and "neglect" are defined by statute, and those definitions apply to both DCFS investigations and to juvenile court proceedings. *See* Utah Code Ann. § 78A–6–105(25)(a) (2008)

(defining neglect); *id.* § 78A–6–105(1)(a) (defining abuse); Utah Code Ann. § 62A–4a–101(1) (stating that " 'abuse' is as defined in [s]ection 78A–6–105"); *id.* § 62A–4a–101(19) (stating that " 'neglect' is as defined in [s]ection 78A–6–105"). Although both abuse and neglect involve conduct that is harmful to minors, the type of conduct addressed by each is different.

### A. Emotional Maltreatment Does Not Fall Within the Definition of Neglect.

■ ¶ 16 While it may be tempting to classify conduct as neglect merely because it is not severe enough to be abuse,[9] the legislature has defined neglect to address a different type of harm. Conduct must fall within the statutory definition to constitute neglect.

¶ 17 Utah Code section 78A–6–105(25)(a) defines neglect as

(i) abandonment of a child . . . ;

(ii) lack of proper parental care of a child by reason of the fault or habits of the parent, guardian, or custodian;

(iii) failure or refusal of a parent, guardian, or custodian to provide proper or necessary subsistence, education, or medical care, or any other care necessary for the child's health, safety, morals or well-being; or

(iv) a child at risk of being neglected or abused because another child in the same home is neglected or abused.

Utah Code Ann. § 78A–6–105(25)(a). The plain language of this statutory definition cannot reasonably be interpreted to include K.Y.'s conduct here.

¶ 18 With the possible exception of abandonment, the neglect definition adopted by the legislature focuses on inaction by the responsible party. *Cf. Black's Law Dictionary* 1132 (9th ed. 2009) (defining "neglect" as "[t]he omission of proper attention to a

---

gory," many of which are listed in that rule. *See* Utah Admin. Code R512–202–2(A). Emotional maltreatment is not one of the categories listed in rule R512–202–2(A) and can be found only in the Guidelines.

9. Neither the juvenile court nor DCFS found that K.Y.'s behavior was abusive. DCFS concluded

that the complaint against K.Y. could not be supported "for physical abuse due to the lack of injury or pain from the incident." Likewise, despite DCFS's argument that either abuse or neglect could be found, the juvenile court substantiated only a finding of "neglect-emotional maltreatment."

person or thing" and suggesting that "the word 'neglect' indicates ... that a person has not done that which it was his duty to do" (internal quotation marks omitted)). In contrast, maltreatment, which is synonymous with abuse, is concerned with inappropriate affirmative acts. *See Webster's Third New International Dictionary* 1368 (1986) (defining "maltreat" as "to treat ill"; "treat roughly"; "abuse, mistreat, misuse").[10] K.Y.'s affirmative acts cannot be reasonably included within the plain language of the statutory definition of neglect.

¶ 19 Even if it were necessary to look beyond the plain language of this statutory definition, there is nothing to support the juvenile court's classification of emotional maltreatment as neglect. The Utah Code's explicit exclusion of reasonable discipline, self-defense, and other necessary physical restraint from the definition of abuse, *see* Utah Code Ann. § 78A–6–105(1)(b); *see also infra* ¶¶ 23–25, but not from the definition of neglect, *see id.* § 78A–6–105(25), indicates that the legislature never contemplated that neglect might be construed to encompass the same types of affirmative disciplinary actions that may constitute abuse. Furthermore, rule R512–202–2(A)(3) of the Utah Administrative Code,[11] which, unlike the Guidelines, was promulgated in accordance with the UARA and has the force of law, *see generally* Utah Code Ann. § 63G–3–202(2) (2008) ("An agency's written statement that is made as a rule in accordance with the requirements of the [UARA] is enforceable and has the effect of law."), lists emotional abuse as an example of abuse, not neglect.[12] *Compare* Utah Ad-

min. Code R512–202–2(A)(3), *with id.* R512–202–2(B).

¶ 20 Because the statutory definition of neglect cannot be construed to include emotional maltreatment, the juvenile court erred by substantiating a finding of neglect in this case. K.Y. urges us to reverse on that basis without considering whether the juvenile court's decision can be affirmed as abuse because, although the State argued that the facts supported a finding of either neglect or abuse, the juvenile court substantiated only neglect. In contrast, the State maintains that this court can affirm the finding of emotional maltreatment as a finding of abuse if "abuse is a better fit with [K.Y.]'s conduct than neglect."[13] We agree that it is appropriate to address whether the challenged conduct may properly be categorized as abuse. *See generally Bailey v. Bayles,* 2002 UT 58, ¶ 10, 52 P.3d 1158 (holding that an appellate court may affirm "on any legal ground or theory apparent on the record" (internal quotation marks omitted)).

B. Emotional Maltreatment Can Constitute Abuse Only If the Conduct Meets the Statutory Definition.

■ ¶ 21 The legislature has defined "abuse" as "(i) nonaccidental harm of a child; (ii) threatened harm of a child; (iii) sexual exploitation; or (iv) sexual abuse." Utah Code Ann. § 78A–6–105(1)(a) (2008). Importantly, "harm" is defined as "physical, emotional, or developmental injury or damage." *See id.* § 78A–6–105(19). However, the legislature has expressly excluded certain con-

---

**10.** The Guidelines' definition of emotional maltreatment also proscribes specific affirmative acts, such as making demeaning or threatening statements, engaging in violent or emotionally abusive conduct, or providing children with harmful materials or substances. *See DCFS Guidelines* at 14.

**11.** Rule R512–202–2 defines emotional abuse as
  a. General emotional abuse, such as a pattern or severe isolated incident of:
    i. Demeaning or derogatory remarks about the child or other family member in the presence of the child;
    ii. Perception of or actual threatened harm;
    iii. Corrupting or exploiting the child;
    iv. Multiple false reports to [child protective services];

    v. Terrorizing;
    vi. Spurning (hostile rejecting);
    vii. Denying emotional responsiveness;
    viii. Isolating.
Utah Admin. Code R512–202–2(A)(3).

**12.** We note that the Guidelines also include emotional maltreatment in the definition of abuse but not of neglect. *Compare DCFS Guidelines* at 2, *with id.* at 26.

**13.** Neither DCFS's letter to K.Y. informing her of its finding nor the ALJ's written decision specified whether the initial finding was for abuse or neglect. Instead, both characterized the finding as one for "Emotional Maltreatment–General."

duct from the definition of abuse, including "reasonable discipline of minors by parents, guardians, teachers, or other persons in loco parentis." *See* Utah Code Ann. § 76–2–401(c) (2008); Utah Code Ann. § 78A–6–105(1)(b)(i)–(ii). Thus, K.Y.'s conduct could not constitute abuse unless (1) it was not reasonable discipline by a teacher and (2) it caused emotional injury or damage to Student.

### III. The Record Does Not Support a Finding that K.Y.'s Actions Toward Student Constitute Abuse.

¶ 22 We conclude that the evidence is insufficient to affirm the juvenile court's decision on the alternative ground of abuse for two reasons. First, the juvenile court never considered whether K.Y.'s actions were excluded from the definition of abuse as reasonable discipline by a teacher. Second, the evidence is insufficient to support a finding that Student suffered damage or injury.

### A. The Juvenile Court Did Not Consider Whether K.Y.'s Actions Were Reasonable Discipline Exempt from the Statutory Definition of Abuse.

¶ 23 Because of the parties' focus on the Guidelines' definition of emotional maltreatment, the juvenile court was never asked to consider whether K.Y. engaged in reasonable teacher discipline that DCFS cannot classify as abuse. *See* Utah Code Ann. § 53A–11–804(1)(a), (2) (2009) (providing that civil or criminal action against a teacher who engages in corporal punishment is only permissible if the teacher's conduct would not be considered reasonable discipline under the exception provided in Utah Code section 76–2–401). To affirm on the alternative ground of abuse, the record must support a conclusion that K.Y.'s actions fall within the statutory abuse definition, which expressly excludes reasonable teacher discipline, *see* Utah Code Ann. § 78A–6–105(1)(b)(i)–(ii). Here, neither the parties nor the juvenile court ever considered whether K.Y.'s actions were reasonable.

¶ 24 Although the juvenile court relied heavily on the school district's policy against corporal punishment in finding that K.Y.'s actions were "inappropriate," the breach of that policy does not establish definitively that the conduct was unreasonable. While the school district representative and principal indicated that K.Y.'s conduct was technically at odds with the district's prohibition against corporal punishment, presumably because the scotch tape touched Student,[14] it would not violate the statutory definition of "corporal punishment," which requires "the intentional infliction of physical pain," Utah Code Ann. § 53A–11–801(2) (2009). Further, even if K.Y.'s conduct did violate the statutory restrictions on corporal punishment, *see id.* § 53A–11–802(1) (prohibiting corporal punishment by public school teachers without written parental permission), we could not conclude that it was unreasonable as a matter of law. *Cf. Hansen v. Eyre*, 2005 UT 29, ¶ 12 n. 4, 116 P.3d 290 (holding that "the violation of a statute does not necessarily constitute negligence per se and may be considered only as evidence of negligence" (internal quotation marks omitted)). While the legislature has provided that all incidents of corporal punishment "shall" be addressed by the school authorities, *see* Utah Code Ann. § 53A–11–803(1)(b) ("If a violation [of the corporal punishment prohibition] is confirmed, school authorities shall take prompt and appropriate action, including in-service training and other administrative action, to ensure against a repetition of the violation."), only unreasonable corporal punishment by teachers can be the subject of civil or criminal action, *see id.* § 53A–11–804(1)(a), (2) (prohibiting civil or criminal action against a teacher exercising reasonable discipline); Utah Code Ann. § 78A–6–105(1)(b)(i)–(ii) (excluding reasonable teacher discipline from the definition of abuse).

¶ 25 The issue of whether discipline was reasonable is a fact-dependent analysis that must take into account the various circumstances of the particular case. *See In re L.P.*, 1999 UT App 157, ¶¶ 8–9, 981 P.2d 848 (listing various factors that may indicate whether discipline was reasonable and

14. It is unclear how the school district's corporal punishment policy differs from the statutory definition because the precise language of the policy was not included in the record.

stressing the importance of comprehensive factual findings). The juvenile court did not discuss the reasonableness of K.Y.'s actions in the context of the statutory exception to the definition of abuse, concluding only that her actions were "inappropriate" in light of the school district's policy. Because the juvenile court never considered this question, we do not know whether it would have found that K.Y.'s actions were reasonable.

B. The Evidence Was Insufficient to Prove by a Preponderance of the Evidence that K.Y.'s Actions Were Harmful.

¶ 26 Even if putting a single piece of scotch tape on each of Student's wrists for two minutes was not reasonable under the circumstances of this case, the evidence was insufficient, as a matter of law, to support a finding of damage or injury. A substantiated judicial finding of abuse must be "based on a preponderance of the evidence," Utah Code Ann. § 62A–4a–101(31) (Supp.2010), for which the State has the burden of proof, *see id.* § 62A–4a–1009(5)(a). The preponderance of the evidence standard "requires the proponent of a contested fact to demonstrate that its existence is more likely than not." *Harken Sw. Corp. v. Board of Oil, Gas & Mining,* 920 P.2d 1176, 1182 (Utah 1996). Thus, before the juvenile court could make a finding of abuse, it was the State's burden to prove that K.Y.'s actions more likely than not caused or threatened harm to Student. *See* Utah Code Ann. § 78A–6–105(1)(a) (2008). We hold that, as a matter of law, the State has not met this burden.

¶ 27 Even accepting all of the juvenile court's findings as true, including the fact that the other children in Student's class were laughing at her during the taping incident and that the incident scared and embarrassed Student, the evidence is insufficient to prove abuse. The statutory definition of harm requires a finding that the minor suffered or was threatened with "physical, emotional, or developmental injury or damage." *Id.* § 78A–6–105(19)(a). Each of these terms implies something more than fleeting embarrassment. Yet our review of the record convinces us that the State has presented no evidence from which the juvenile court could

have found, by a preponderance of the evidence, that Student suffered emotional damage or injury apart from general embarrassment at being reprimanded in front of the class. If that were sufficient to constitute the harm necessary to support a finding of abuse, teachers would be at great risk to impose any classroom discipline, including placing a student in time out, asking a specific student to stop chatting, or sending a student to the principal's office. The evidence does not support a finding that Student suffered any harm apart from this ordinary reaction to being reprimanded. To the contrary, the evidence indicates that Student attended the rest of the school day without incident, that Mother declined counseling on Student's behalf, and that Mother later requested that Student be put back in K.Y.'s class for rotations. Furthermore, as of the time of the DCFS interview, Student stated that she enjoyed school despite the fact that she was then attending classes taught by K.Y. during rotation.

¶ 28 Nor does the juvenile court's finding that "taping [Student]'s hands to her desk was done to embarrass or humiliate her and therefore modify her behavior" support a finding of damage or injury. First, we note that any form of school discipline is intended to modify the student's behavior. Second, we can find no evidence to support the juvenile court's finding that K.Y. acted with the intent to embarrass or humiliate Student. K.Y. testified that she intended the taping to be an object lesson to help Student "learn to keep her hands still," "make her aware of what was going on in the classroom," and help her to "pay attention." In fact, the juvenile court found that K.Y. "attempted to resolve [the] issue" by taking Student "out in the hall to discuss her behavior" but that Student "continued to not pay attention in class and continued to take things out of her desk." K.Y. testified that she tried this approach first because she did not want Student "to be embarrassed." It was only after this practice failed with Student over the course of two days that K.Y. attempted to modify Student's behavior by taping her hands to her desk. No other witnesses provided any testimony or even speculation that K.Y.'s motives were to humiliate student. In

fact, the school principal gave his opinion that K.Y.'s purpose was *not* to embarrass or humiliate Student, and the district representative indicated that he viewed K.Y.'s actions as "poor judgment" but "not malicious." *See generally In re L.P.*, 1999 UT App 157, ¶ 8, 981 P.2d 848 (holding that "malicious[ ] and sadistic[ punishment imposed] for the very purpose of causing harm" is one of several factors indicative of abuse (internal quotation marks omitted)).

¶ 29 The only unusual aspect of the discipline at issue in this case is the use of a single six-inch strip of scotch tape to "secure" Student's hands loosely to the desk.[15] While taping Student's hands may have violated a district policy, there was no evidence presented from which the juvenile court could conclude that the taping caused or threatened "physical, emotional, or developmental injury or damage." *See* Utah Code Ann. § 78A-6-105(1)(a), (19). Indeed, DCFS conceded that there was a "lack of injury or pain from the incident," and the juvenile court did not substantiate the case for abuse. We agree with K.Y. that the evidence is insufficient as a matter of law to support a finding of abuse.[16]

## CONCLUSION

¶ 30 In substantiating a finding of "neglect-emotional maltreatment" against K.Y., the juvenile court erred by relying on DCFS's unpromulgated Guidelines. The statutory definition of neglect cannot be read to include emotional maltreatment. Furthermore, emotional maltreatment may be substantiated as abuse only if the underlying conduct meets the statutory definition. Because there has been no finding as to whether K.Y.'s disciplinary actions were reasonable and the record provides no evidence of damage or injury, we cannot affirm the juvenile court's finding on the alternative ground of abuse.

¶ 31 Reversed.

---

15. Indeed, the State conceded at oral argument that if K.Y. had put the scotch tape on the desk and told Student to place her hands on the tape and not move them until given permission, the discipline would not have been abusive.

¶ 32 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and MICHELE M. CHRISTIANSEN, Judge.

---

16. For the same reasons, we determine that the evidence is insufficient to support the juvenile court's conclusion that K.Y. subjected Student to a "serious incident of psychologically destructive behavior," *see DCFS Guidelines* at 14.